IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MC TRILOGY TEXAS, LLC,           §
                                 §
                Plaintiff,       §
                                 §
VS.                              §        Civil Action No. 3:22-CV-2154-D
                                 §
CITY OF HEATH, TEXAS, et al.,    §
                                 §
                Defendants.      §

MEMORANDUM OPINION
AND ORDER

Defendants[1] move under Fed. R. Civ. P. 12(b)(6) to dismiss plaintiff MC Trilogy

Texas, LLC's ("MC Trilogy's") complaint for failure to state a claim on which relief can be

granted.  For the reasons explained below, the court grants the motion in part and denies it

in part.

I

The City of Heath, Texas ("Heath") is a home rule municipal corporation.[2]  Heath

officials therefore have wide latitude to make certain decisions, such as whether to annex

property, so long as doing so comports with applicable laws.  In 2010 Heath purportedly

---

[1]Defendants are the City of Heath, Texas, Mayor Kelson Elam, City Council Members Frank New, Paul Ruffo, Donna Rolater, Brent Weaver, Jim Chester, and Rich Krause, and Planning and Zoning Commission Members James Tunnell, Wayne Gordon, Thomas Bishop, Sharon Caldwell, Harry Heinkele, Joe Ruszkiewicz, and Robert Shaw.

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes MC Trilogy's complaint in the light most favorable to it, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in MC Trilogy's favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

annexed 139 acres of undeveloped land ("the Property") that MC Trilogy now owns. The alleged annexation was accomplished by adopting Ordinance 100430. MC Trilogy maintains, however, that no public meeting was held regarding Ordinance 100430 and that there is no record that the Heath City Council formally voted on the Ordinance.

At the time the Property was annexed, it was subject to a temporary zoning classification, designating the land as an Agricultural District. This classification allowed single-family residences to be built on lots that were at least one acre in size. But on August 24, 2021 the Heath City Council allegedly adopted Ordinance 210824A, amending the Agricultural District zoning classification to require parcels of at least ten acres per each single-family home. Because Ordinance 210824A contained a penalty, it was published in *The Dallas Morning News* on September 4, 2021. Under the Heath city charter the Ordinance took effect on the date of publication. MC Trilogy maintains that this Amended Ordinance is invalid because the procedures for enacting it did not comport with applicable state and local laws.

After Ordinance 210824A was adopted, but before it became effective, MC Trilogy filed a preliminary plat application with Heath, proposing that 69 residential lots be placed on the Property, each with a minimum size of one acre. MC Trilogy alleges that the application was deemed complete by operation of law, and MC Trilogy later filed a final plat. According to MC Trilogy, the Heath City Council disapproved the final plat in August 2022, although the final plat was never disapproved in accordance with applicable regulations.

MC Trilogy then filed this lawsuit, alleging that defendants have violated the Fifth and

Fourteenth Amendments to the United States Constitution, as well as provisions of the Texas Constitution and other state laws, by depriving MC Trilogy of the beneficial use of the Property without just compensation or due process. MC Trilogy brings claims under 42 U.S.C. § 1983 based on a "deprivation of civil rights" and seeks a declaratory judgment and writ of mandamus. Compl. ¶¶ 90-91, 119-28.

Defendants move on several grounds to dismiss this action under Rule 12(b)(6) for failure to state a claim on which relief can be granted. MC Trilogy opposes the motion. The court has heard oral argument.

## II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive defendants' Rule 12(b)(6) motion to dismiss, MC Trilogy must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S.

- 3 -

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"   *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* at 678 (citation omitted).

III

The court addresses first defendants' contention that the official-capacity claims against members of the Heath City Council and Heath Planning and Zoning Commission must be dismissed as redundant of the claims against Heath itself.

Claims against government agents in their official capacities are duplicative when claims are made against the government entity.   *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is . . . treated as a suit against the entity.").   It is therefore appropriate in such circumstances for the court to dismiss the official-capacity claims.   *See, e.g.*, *Palo ex rel. Estate of Palo v. Dallas Cnty.*, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against county).   Accordingly, defendants' motion to dismiss is granted as to the official-capacity claims alleged against members of the Heath City Council and Heath Planning and Zoning Commission.

IV

Defendants also move to dismiss MC Trilogy's substantive and procedural due process claims.[3]

A

Review of municipal zoning by federal courts based on substantive due process principles is strictly circumscribed; the court has the authority to determine whether the decision is arbitrary or capricious, but nothing more. *Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986). "[T]he outside limit upon a state's exercise of its police power in zoning decisions is that they must have a rational basis." *Id.* at 482. A zoning decision must be upheld if it is "at least debatable" that it is supported by a rational basis. *Id.* This principle applies both to generally-applicable zoning decisions and to specific applications of zoning classifications. *Id.* at 480; *see also Blackman v. City of Big Sandy*, 507 F.2d 935, 936 (5th Cir. 1975).

Here, both challenged decisions could conceivably be supported by a rational basis, such as the desire to mitigate traffic issues. Accordingly, to the extent that MC Trilogy's claim for deprivation of civil rights (count 1) is based on alleged violations of substantive due process, the motion is granted.

_____

[3]Defendants contend that MC Trilogy has failed to state a claim on which relief can be granted with respect to these claims, and, alternatively, that the claims are not ripe. Because the court agrees with the first argument, it need not reach the second.

B

MC Trilogy has also failed to plead a plausible procedural due process claim. First, "it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply." *Jackson Ct. Condos., Inc. v. City of New Orleans*, 874 F.2d 1070, 1074 (5th Cir. 1989). "[W]here a zoning decision has been made by an elected body such as a City Council, [the Fifth Circuit has] characterized the action as legislative or 'quasi-legislative' negating procedural due process claims." *Id.*

MC Trilogy's first procedural due process claim—asserted in support of its declaratory judgment claim—is aimed at Heath's decision to enact the Amended Ordinance, a decision that is clearly legislative in nature. Accordingly, no procedural due process rights attach in the context of that decision.

The second procedural due process claim—asserted in support of its claim for deprivation of civil rights—pertains, in pertinent part, to the disapproval of MC Trilogy's preliminary and final plat applications. Similar decisions have occasionally been characterized as legislative rather than adjudicative. *See, e.g.*, *City of Round Rock v. Smith*, 687 S.W.2d 300, 302-03 (Tex. 1985). If that were the case, procedural due process rights would not attach. But regardless how this claim is characterized, it is flawed nevertheless because it rests entirely on defendants' purported failure to comply with state law. So long as the procedures used when rendering a decision regarding MC Trilogy's plats comply with the minimum process required by the *federal* Constitution—and there are no allegations in this lawsuit that they did not—the mere violation of state law does not itself offend due

process.  *Smith v. City of Picayune*, 795 F.2d 482, 488 (5th Cir. 1986).  MC Trilogy's allegations that its due process rights were violated when defendants did not follow state law are therefore inadequate to state a procedural due process claim.

Accordingly, to the extent that MC Trilogy's claims for deprivation of civil rights (count 1) and declaratory judgment (count 3) are based on alleged violations of procedural due process, the motion is granted.

V

Defendants maintain that the court should refrain from addressing MC Trilogy's numerous state-law claims, either by declining to exercise supplemental jurisdiction or by exercising *Pullman* abstention.[4]  The court will consider these arguments in tandem because they turn on the same question: whether this case involves novel or unclear issues of state law.

A

Under 28 U.S.C. § 1367(a), federal courts can exercise supplemental jurisdiction over state-law claims "that are so related to claims . . within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  To determine whether to exercise supplemental jurisdiction, courts balance the statutory factors set out in § 1367; the common law factors of judicial economy, convenience, fairness, and comity; and the threat of improper forum manipulation.  *Clapper*

---

[4]*R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941).

*v. Am. Realty Invs., Inc.*, 2018 WL 2739014, at \*2 (N.D. Tex. June 6, 2018) (Fitzwater, J.).

"The statutory factors are '(1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining jurisdiction.'" *Id.* (quoting *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011)).  Some of these factors counsel in favor of exercising supplemental jurisdiction, and others counsel against doing so.  The critical factor is whether "novel" state-law issues are involved.  *Id.*

B

Under the *Pullman* abstention doctrine, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided."  *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).  *Pullman* abstention is appropriate where a case involves "(1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for [the court] to rule on the federal constitutional question." *Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm.*, 283 F.3d 650, 653 (5th Cir. 2002).  The instant case clearly involves a federal constitutional challenge to state action. Accordingly, the only issue left to be resolved is whether this lawsuit also involves an unclear issue of state law.

C

Although there are complex state-law issues involved in this case, the court is not persuaded that any issue is unsettled or novel rather than being simply complicated. *See Baran v. Port of Beaumont Nav. Dist. of Jefferson Cnty. Tex.*, 57 F.3d 436, 442 (5th Cir. 1995) ("For a federal court adjudication to be stayed under *Pullman*, more than an ambiguity in state law . . . is required."). At oral argument, defendants highlighted five state-law issues that they maintain are so unclear that this court should be chary of reaching them. One issue—whether MC Trilogy's taking claim is ripe despite its declining to seek a conditional use permit—is indirectly settled by the court's ripeness holding below. *See infra* § VII(B). It appears that the other four issues can be settled at this stage of the litigation by applying relatively straightforward state law. Put differently, while these issues feature complexities, they are neither novel nor unclear.

Accordingly, the court concludes that it is appropriate to exercise supplemental jurisdiction over MC Trilogy's state-law claims, and it declines to abstain under *Pullman*. Defendants' motion to dismiss is denied in both respects.

VI

Defendants move to dismiss any challenge to the purported annexation of the Property on the grounds that MC Trilogy lacks standing to bring such a challenge and that any objection to the annexation is untimely.

A

In Texas, "[t]he only proper method for attacking the validity of a city's annexation of territory is by quo warranto proceeding, unless the annexation is wholly void." *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436 (Tex. 1991).  Therefore, a private citizen lacks standing to challenge an annexation unless it is void.  *Id.*

Typically, an annexation is void where "the municipality exceeded the annexation authority delegated to it by the Legislature."  *Id.* at 438 (listing examples of void annexations).  By contrast, mere procedural irregularities render an annexation ordinance voidable rather than void.  *Id.* at 439.  At least one Texas intermediate appellate court has held, however, that procedural irregularities can be so egregious as to render the annexation void.  *City of Northlake v. E. Justin Joint Venture*, 873 S.W.2d 413, 417 (Tex. App.—Fort Worth 1994, writ denied) (holding that "the failure to have the necessary votes to enact the ordinance rises to the level where the ordinance is void, and not just voidable" such that the plaintiff had standing to sue).

This court, having found no binding decision of the Supreme Court of Texas, "must make an 'Erie-guess,' i.e., a prediction of how the Supreme Court of Texas would resolve the issue if presented with the same case."  *Charalambopoulos v. Grammer*, 2015 WL 390664, at *5 (N.D. Tex. Jan. 29, 2015) (Fitzwater, J.) (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010)).  In making an *Erie*-guess, "a federal court is bound by an intermediate state appellate court decision unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Kunkel v. D.R. Horton - Tex., Ltd.*,

2005 WL 8158381, at *3 (N.D. Tex. Aug. 3, 2005) (Fitzwater, J.) (quoting *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998)).

B

MC Trilogy maintains that the annexation is void because there is no record of defendants' having held a meeting or formally voted on the challenged annexation. Defendants do not explicitly disagree with these allegations in their motion to dismiss; they simply maintain that these objections pertain to mere procedural irregularities.

The court predicts that the Supreme Court of Texas would hold that the complaint's allegations support a finding that the annexation ordinance is void rather than voidable. An intermediate Texas appellate court has held that particularly egregious procedural deficiencies of the kind that undermine a claim that an action was taken under color of authority can render that act void. *Northlake*, 873 S.W.2d at 417. No court has expressly disagreed with this proposition, and at least two courts of appeals, including the intermediate appellate court that sits in Dallas, have implicitly endorsed it. *See City of Balch Springs, Tex. v. Lucas*, 101 S.W.3d 116, 121 (Tex. App.—Dallas 2002, no pet.); *Ryan Servs., Inc. v. Spenrath*, 2008 WL 3971667, at *4 (Tex. App.—Corpus Christi-Edinburg Aug. 28, 2008, no pet.) (mem. op.). The Supreme Court of Texas has limited other aspects of the holding in *Northlake*. *See Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995). But it has never called into question this particular premise.

Perhaps most important, the rationale behind the Supreme Court of Texas' most closely-related decision, *Alexander Oil*, cuts in favor of applying the *Northlake* rule to the

instant case.  In *Alexander Oil* the court stated that the difference between a void and a voidable ordinance is whether it was "within the power of the municipality to promulgate," accomplished after the municipality's "jurisdiction was activated by giving notice required by statute," and "authorized by color of law."  *Alexander Oil*, 825 S.W.2d at 438-39.

An annexation ordinance that was purportedly enacted without a vote or official meeting on the subject constitutes action outside of "the power of the municipality to promulgate."  *Id.* at 438.  It is the kind of action that is not "authorized by color of law."  *Id.* at 439.  And, in this case, the court has no reason to predict that the Supreme Court of Texas would disagree.  Thus as a result of the absence of "persuasive data that the highest court of the state would decide otherwise," the court treats *Northlake* as binding and holds that MC Trilogy has plausibly pleaded that the challenged annexation is void.  *See Kunkel*, 2005 WL 8158381, at *3.  MC Trilogy therefore has standing at this stage to pursue its challenge to the annexation.[5]

C

But the preceding analysis does not end the discussion.  Defendants maintain that, even if MC Trilogy has standing to challenge the annexation, any objection has been made too late and the annexation ordinance has been validated by operation of law under Tex. Loc. Gov't Code Ann. §§ 43.901 and 51.003(a).

Section 43.901 is irrelevant here.  It merely provides that the consent of all impacted

---

[5]Subsequent factual or legal developments may alter the court's conclusion.

landowners may be presumed after a certain period of time has elapsed.  But MC Trilogy's challenge to the annexation does not rest on defendants' failure to obtain the required consent before annexing the Property.  The law says nothing of validating annexations that are inadequate in ways unrelated to consent.

Section 51.003(a) likewise is not dispositive because it is explicitly inapplicable to void municipal actions.  Tex. Loc. Gov't Code Ann. § 51.003(b)(1).  Having determined that the action challenged here likely would be deemed void by a state court hearing this case, the court concludes that § 51.003(a) does not apply.

Accordingly, the court denies defendants' motion to dismiss MC Trilogy's challenge to the validity of the annexation ordinance and concludes at this stage of the case that MC Trilogy has standing to bring such a challenge.

VII

Finally, the court turns to defendants' contention that MC Trilogy's regulatory taking claim is not ripe.

A

The ripeness doctrine is intended to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . .." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967).  Determining whether a controversy is ripe requires courts "to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149.

To demonstrate that its regulatory taking claim is ripe, MC Trilogy must show that a

- 13 -

final determination has been made by the government entity. *See Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). This rule applies to claims arising under both the federal and Texas Constitutions. *Dominican Mgmt., LLC v. City of Arlington, Tex.*, 7 F.Supp.3d 659, 667 (N.D. Tex. 2014) (Boyle, J.). "A 'final decision' usually demands both a rejected development plan and a denial of a variance from the controlling regulations." *Id.* (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998)). Finality is critical because "[a] court cannot determine whether the regulation has gone 'too far' unless it knows how far the regulation goes." *Mayhew*, 964 S.W.2d at 924 (citing *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986)). If pursuing an appeal would be futile, MC Trilogy would be excused from the final-determination requirement. *Dominican Mgmt.*, 7 F.Supp.3d at 664 ("Futile variance requests or re-applications are not required."). A futility argument must not rely "on speculation rather than a conclusive showing that further attempts to secure relief would have been fruitless." *Beach v. City of Galveston, Tex.*, 2022 WL 996432, at *3 n.5 (5th Cir. Apr. 4, 2022) (per curiam).

B

MC Trilogy has received a final determination in this case, and any appeal would be futile. MC Trilogy's claim is not aimed at the denial of its plat application—a decision that, according to defendants, is not final because MC Trilogy can still seek a conditional use permit. Rather, MC Trilogy is challenging the imposition of a new zoning classification (changing the minimum lot size from one acre to ten acres) and the application of an allegedly invalid ordinance to MC Trilogy's plat application. According to MC Trilogy,

- 14 -

Heath's conduct is objectionable because it involves applying an ordinance that is both invalid and inapplicable.  And as to those issues, MC Trilogy has plausibly pleaded that Heath's decision is final.

Defendants asserted at oral argument that MC Trilogy can still seek a conditional use permit under the new ordinance.  But that process would never rectify the problem that MC Trilogy is actually complaining about: the existence and application of the new ordinance. As to that decision, defendants have given their final word, and any attempt to change that determination would be futile.

Accordingly, the court holds that MC Trilogy's taking claim is ripe.  Defendants' motion to dismiss on this ground is denied.

\* \* \*

For the reasons explained, the court grants in part and denies in part defendants' motion to dismiss for failure to state a claim.  MC Trilogy's official-capacity claims against members of the Heath City Council and Heath Planning and Zoning Commission are dismissed, as are MC Trilogy's claims for deprivation of civil rights (count 1) and declaratory judgment (count 3) to the extent based on alleged violations of procedural and substantive due process.  The court declines to dismiss the remaining federal- and state-law

claims.

**SO ORDERED**.

March 16, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE