IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MC TRILOGY TEXAS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:22-CV-2154-D |
| | § | |
| CITY OF HEATH, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action challenging a municipality's land use decisions, subpoenaed non-party city officials[1] and defendant the City of Heath, Texas ("Heath") move in separate motions under Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv) to quash and for a protective order. They maintain that plaintiff MC Trilogy Texas, LLC ("MC Trilogy") is seeking information that is privileged or protected and that imposes an undue burden. Alternatively, both request that the court modify the subpoenas to allow only the disclosure of necessary information. MC Trilogy moves to compel production of documents. For the reasons explained, the court grants in part and denies in part the non-party city officials' July 13, 2023 motion to quash and for a protective order and imposes a meet and confer requirement; denies Heath's July 13, 2023 motion to quash and for a protective order; and grants MC Trilogy's August 3, 2023

---

[1]The subpoenaed non-parties are all individuals who served as members of the City of Heath City Council or the City of Heath Planning and Zoning Commission at the time of the alleged conduct. The individuals include Brent Weaver, Donna Rolater, Frank New, Harry Heinkele, Jim Chester, Joe Ruszkiewiez, James Tunnell, Paul Ruff, Rich Krause, Robert Shaw, Thomas Bishop, Wayne Gordon, Kelson Elam, and Sharon Caldwell.

motion to compel.[2]

I

The court assumes the parties' familiarity with its prior memorandum opinions and orders in this case, *see MC Trilogy Tex., LLC v. City of Heath (MC Trilogy I)*, ___ F.Supp.3d ___, 2023 WL 2544308, at *1 (N.D. Tex. Mar. 16, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath (MC Trilogy II)*, 2023 WL 3635639, at *1 (N.D. Tex. May 24, 2023) (Fitzwater, J.), and recounts the background facts and procedural history only as necessary to understand this decision.

In *MC Trilogy II* the court granted Heath's motion for a protective order preventing MC Trilogy from obtaining discovery from non-party city officials under Rule 34.[3] *See MC Trilogy II*, 2023 WL 3635639, at *1. "The court expressed no view regarding the extent to which another discovery procedure, such as the subpoena process outlined in Rule 45, could be used." *Id*. at n.3. MC Trilogy then served Rule 45 subpoenas duces tecum on the same non-party city officials from whom it had previously sought discovery. The subpoenas seek documents that can be broadly categorized as concerning the following: (1) the preliminary and final plat application; (2) the Heath and McLendon-Chisholm Portion of MC Trilogy's development; (3) telephone data; (4) the Rockwall County Municipal Utility District No. 10

---

[2]There are several other discovery motions that are currently pending. These will be decided in due course, after they become ripe.

[3]All references in this memorandum opinion and order to a "Rule" are to a Federal Rule of Civil Procedure. Other rules are identified specifically.

- 2 -

("MUD"); and (5) Heath's local ordinances and development plans.  The non-party city officials object to the subpoenas and move to quash and for a protective order on the basis of legislative privilege, deliberative process privilege, undue burden, attorney-client privilege, and work product protection.[4]  Heath has filed a motion in support of the non-party city officials' motion.  MC Trilogy moves to compel the production of documents.  The court is deciding the motions on the briefs, without oral argument.

II

The court turns first to the non-party city officials' motion to quash and for a protective order (ECF No. 57).

A

The non-party city officials seek to prevent MC Trilogy from obtaining production regarding notes and communications concerning the MC Trilogy development.  They maintain that some of the production that MC Trilogy seeks is protected by the legislative privilege because land use decisions relate to a legislative function insofar as they reflect discretion, policymaking, and are generally applicable.  Regarding the remaining production

---

[4]The court does not address whether the deliberative process privilege applies to certain production requests because the court grants the motion to quash regarding those requests on legislative privilege grounds.  Nor does the court address whether attorney-client privilege or work product protection applies because the non-party city officials lack standing to assert either the privilege or protection.  It is well established under Texas and federal law that the attorney-client privilege can be asserted only by the client or by one authorized to act on the client's behalf, like an attorney.  *See* Tex. R. Evid. 503(c); *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  And work production protection "belongs to both the client and the attorney, either of whom may assert it." *In re Grand Jury Subpoenas*, 561 F.3d 408, 411 (5th Cir. 2009).

requests, the non-party city officials posit that the subpoenas impose an undue burden because they seek duplicative and irrelevant production.[5]  Alternatively, the non-party city officials request that the court modify the subpoenas to allow only the disclosure of necessary information.

MC Trilogy responds that the production it seeks is not protected by legislative privilege because the challenged acts relate to an administrative or ministerial, not a legislative, function.  It contends that, to the extent the challenged acts are legislative, the privilege is either strictly construed to permit discovery or is waived.  MC Trilogy also maintains that the discovery requests do not impose an undue burden because MC Trilogy is seeking information that is relevant to its federal- and state-law claims and proportional to the needs of the case.  For example, according to MC Trilogy, communications among the subpoenaed non-party city officials relating to the Trilogy development are relevant to establish "the character of the City's action . . . and its investment-backed expectations" to prove a takings claim.  P. Resp. to Mot. to Quash (ECF No. 70) at 15.  And, MC Trilogy contends, the requests are also "sufficiently tailored in time, scope[,] and subject matter." *Id.* at 12.

---

[5]The non-party city officials also move for relief on the ground that the subpoenas pose an undue burden because they do not allow "reasonable time" for compliance.  Time for compliance is a separate ground under Rule 45(d)(3)(A)(i) rather than 45(d)(3)(A)(iv).  Nevertheless, the court need not address this argument because it is modifying the subpoenas based on undue burden.

B

Rule 26(b)(1) provides that a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Under Rule 45(d)(3)(A)(iii), if the party seeks information that "requires disclosure of privileged or other protected matter [and] no exception or waiver applies," the court, on timely motion, "must quash or modify [the] subpoena." *Sully v. Freeman*, 2017 WL 3457123, at *1 (W.D. Tex. Feb. 1, 2017). The moving party must establish that information sought by the subpoena is "privileged or other protected matter." *Id.*

Federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law. *See* Fed. R. Evid. 501. The legislative privilege "is an evidentiary privilege, 'governed by federal common law.'" *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't (Jefferson)*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez v. Perry*, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)). "State lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) (internal quotation marks omitted) (first citing *United States v. Helstoski*, 442 U.S. 477, 489, 499 (1979); and then citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "[T]he privilege is not limited to the casting of a vote on a resolution or bill; it covers all aspects of the legislative process" and protects the function of the legislature more broadly. *La Union Del Pueblo Entero*, 68 F.4th at 235; *accord In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015).

The legislative privilege's primary purpose is to allow lawmakers to "focus on their public duties." *See, e.g.*, *Hubbard*, 803 F.3d at 1310 (citing *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (explaining that the Speech or Debate Clause ensures that civil litigation will not "create[] a distraction and force[] Members to divert their time, energy, and attention from their legislative tasks to defend the litigation")). Complying with discovery requests detracts from lawmakers' public duties. *See La Union Del Pueblo Entero*, 68 F.4th at 237-38.

> The Supreme Court explained in *Tenney* that "[t]he reason for the privilege is clear." "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary[] that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense." . . . "[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators," and courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation.

*Id.* at 238 (quoting *Tenney*, 341 U.S. at 374, 377).

But the state legislative privilege is not absolute. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 2022 WL 2713263, at *1 (5th Cir. May 20, 2022) (stating that the court and the Supreme Court have confirmed that the state legislative privilege is not absolute.). "[T]he legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson*, 849 F.3d at 624. The extent to which the legislative privilege is

- 6 -

qualified is determined by "balancing the interests of the party seeking disclosure against the interests of the party claiming the privilege." *Harding v. County of Dallas*, 2016 WL 7426127, at *3 (N.D. Tex. Dec. 23, 2016) (Fitzwater, J.) (citing *Perez*, 2014 WL 106927, at *2). Courts assess the following five factors in performing the balancing test:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.* In considering these factors, "the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.'" *Id.* (quoting *Veasey v. Perry*, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014)).

## C

With the foregoing principles in mind, the court turns to the parties' arguments.

### 1

The court begins by considering whether the topics on which MC Trilogy seeks production relate to a "legislative function," as required for the legislative privilege to apply.

MC Trilogy seeks production on the following topics:

> all notes prepared by or provided to [city officials] relating to (i) the ROW Final Plat Application, or any portion thereof, including all notes prepared by or provided to [city officials] at any meeting of the City Council Planning and Zoning Commission where the ROW Final Plat Application, or any portion thereof, was considered or discussed; (ii) the Heath

> Portion Trilogy Development, including all notes prepared by or
> provided to [city officials] at any meeting of the City Council
> Planning and Zoning Commission where the Heath Portion
> Trilogy Development was considered or discussed; (iii) the
> minimum lot size for a single-family dwelling property in the
> City of Heath (A) Agricultural zoning classification; (iv) the
> City of Heath, Texas Ordinance No. 210824A, including all
> notes prepared by or provided to [city officials] at any meeting
> of the City Council Planning and Zoning Commission where
> Ordinance No. 210824A was considered, discussed, or voted
> upon.

P. Resp. to Mot. to Quash (ECF No. 70) at 7.

The court concludes that topics (iii) and (iv) relate to a legislative function to the extent MC Trilogy seeks to discover the Heath City Council's motives or objectives to enact the agricultural zone's minimum lot size and Ordinance No. 210824A. In *MC Trilogy I* the court stated that Heath's decision to enact an ordinance was "clearly legislative in nature." *MC Trilogy I*, 2023 WL 2544308, at *3. MC Trilogy does not dispute this. Instead, MC Trilogy maintains that it seeks only to discover these topics insofar as they relate to Heath's "ministerial" duty to approve MC Trilogy's final plat application. The court addresses this argument below as it relates to topics (i)-(iv).

The court also concludes that topics (i)-(iv) relate to a legislative function to the extent MC Trilogy seeks to discover Heath's motives or objectives in denying MC Trilogy's final plat application. In particular, MC Trilogy seeks to discover whether Heath "contrive[d] a 'basis'" upon which to deny the ROW Plat Application by considering laws and ordinances not in effect at the time the plat was filed. P. Resp. to Mot. to Quash (ECF No. 70) at 5-6. MC Trilogy maintains that the legislative privilege does not apply because the plat approval

process relates to an administrative or ministerial, rather than a legislative, function.  The court disagrees.

Plat approval relates to a legislative function because the decision impacts the larger population, not specific individuals or property alone.  The Supreme Court of Texas has explained that "[t]he purpose of plat approval is to ensure that subdivisions are safely constructed and to promote the orderly development of the community.  Plat approval protects future purchasers from inadequate police and fire protection, inadequate drainage, and insures sanitary conditions.  Public health, safety, and morals are general public interests."  *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex. 1985).  In *Smith* the Supreme Court of Texas addressed whether plat approval is a proprietary or governmental function for purposes of governmental immunity.  *See id.* at 301-02.  It concluded that plat approval or disapproval is a "quasi-judicial exercise of the police power" and thus subject to governmental immunity because plat approval requires the city to exercise "discretionary powers of a public nature embracing judicial or legislative functions."  *Id.* at 301-03.  The court contrasted plat approval from "ministerial acts[,] which could be performed by a private subcontractor."  *Id.* at 303.  A governmental unit only has a "ministerial duty" to approve a plat application "once the relevant governmental unit determines that a plat conforms to applicable regulations."  *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022).

Plat approval also relates to a legislative function because it is "part and parcel" of modern zoning procedures.  *See La Union Del Pueblo Entero*, 68 F.4th at 236.  The Fifth

Circuit interpreted legislative privilege broadly when it extended the privilege to third party communications outside the legislature. *See id.* In doing so, the Fifth Circuit held that the legislative privilege covered some third party communications because "[m]eeting with 'interest' groups . . . is a part and parcel of the modern legislative procedures through which legislators receive information possibly bearing on the legislation they are to consider." *Id.* (quoting *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980)). Consequently, "the legislative privilege's scope is necessarily broad." *La Union Del Pueblo Entero*, 68 F.4th at 236 (citing *Hubbard*, 803 F.3d at 1308).

Here, the non-party city officials considered general public interests when reviewing MC Trilogy's plat. The plat was denied because it "depicted a residential subdivision with minimal farming, ranching, and related agricultural uses" and "a high volume of through traffic and drainage runoff," contrary to the stated intent of the agricultural district. Compl. (ECF No. 1) at 17 (quoting September 10, 2021 communication from Heath Director of Planning). Other courts have similarly held that the application of zoning and planning ordinances to individual property relates to a legislative function. *See Canaan Christian Church v. Montgomery County*, 335 F.Supp.3d 758, 764 (D. Md. 2018) (holding that county's denial of church's sewer change request was legislative act for purposes of legislative privilege during discovery); *Buonauro v. City of Berwyn*, 2011 WL 2110133, at *3-7 (N.D. Ill. May 25, 2011) (holding that city's denial of clinic's license application integrally related to city's zoning laws was legislative act for purposes of legislative privilege during discovery). The plat approval process is merely another procedure steeped in

- 10 -

legislative thought and function.  *See La Union Del Pueblo Entero*, 68 F.4th at 236.  The court therefore holds that plat approval is a legislative act for purposes of the legislative privilege.

2

Having determined that topics (i)-(iv) relate to a legislative function, the court next considers whether the non-party city officials can rely on the legislative privilege to refuse production on these topics.  The court applies the *Perez* five-factor balancing approach to determine whether the interests of the party seeking disclosure (here, MC Trilogy) outweigh the interests of those claiming the privilege (here, the non-party city officials).  *See Perez*, 2014 WL 106927, at *2.  The court considers, together, topics (i)-(iv) and concludes that each factor weighs against allowing discovery.

a

Factor one—relevance—weighs against allowing discovery.  The non-party city officials contend that the discovery is not relevant because notes of a single legislator, which may reflect mental impressions and the reason for the legislator's vote, are not controlling and may not be attributed to the body as a whole.  In their reply, however, they "concede that their internal notes may be relevant to the Plaintiff's federal taking claim."  Non-Party Officials Reply in Support of Mot. to Quash (ECF No. 82) at 3.

In deciding MC Trilogy's takings claim, the court can consider the character of the governmental action and the extent to which the regulation has interfered with distinct investment backed interests.  *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104,

- 11 -

124 (1978).  The "character " of the governmental action refers to the type of regulation at the heart of the underlying takings claim.  *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538-39 (2005); *Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 840 (Tex. 2012).  For example, in *Penn Central* the "character" of the governmental action was New York City's designation of Grand Central Terminal as a "landmark."  *See Penn Cent. Transp. Co.*, 438 U.S. at 110-11.  The action benefited those who might visit the landmark and damaged Penn Central, who could no longer execute longstanding plans to build a skyscraper above the terminal.  *Id.* at 116-19.  Additionally, "investment-backed expectations" refer to "'the regulatory environment at the time of the acquisition of the property.'"  *Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1345 (Fed. Cir. 2018) (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1350 n.22 (Fed. Cir. 2001) (en banc).  To the extent MC Trilogy seeks to discover whether the Heath city council "contrive[d] a basis" on which to deny the plat, proof of motive is not required to prove character or investment-backed interests for a takings claim.

MC Trilogy also maintains that the discovery it seeks is relevant to its declaratory judgment claim because the Texas Local Government Code mandates that the City shall consider the approval of an application for permit "solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time."  *See* Tex. Loc. Gov't Code Ann. § 245.002.  Plaintiffs in factually similar cases used publicly available documents to prove the city considered more than the laws in effect at the time.  *See Save Our Springs All. v. City of Austin*, 149 S.W.3d 674, 682 (Tex.

App. 2004, no pet.) (development agreement); *Jacks v. Zoning Bd. of Adjustment*, 2019 WL 2998807, at \*2 (Tex. App. 2019, pet. denied) (permit); *Reagan Nat'l Advert. of Austin, Inc. v. City of Cedar Park*, 387 F.Supp.3d 703, 706 n.3 (W.D. Tex. 2019) (regulatory code).  The court has not located a case in which discovery into a city council's non-public motives, objectives, impressions, and/or opinions was required to prove a Chapter 245 claim.  It therefore appears on the present record that MC Trilogy can prove its takings and declaratory judgment claims without relying on the privileged information it seeks in topics (i)-(iv).  Accordingly, the court concludes that the non-party city officials' notes and communications regarding topics (i)-(iv) are not sufficiently relevant to weigh in favor of discovery.

b

Factor two—the availability of other evidence—weighs against allowing discovery for the same reasons as factor one.  MC Trilogy can obtain evidence regarding the Heath city council's "basis" for denying its plat from documents already in its possession, like the city attorney's letter in response to MC Trilogy's plat application, and other publicly available records, like City of Heath, Texas Ordinance No. 210824A and the date it took effect.  MC Trilogy can rely on this information to establish the character of Heath's action or whether Heath properly or improperly denied the plat in accordance with Chapter 245.  Factor two weighs against disclosure.

c

Factors three and four—the "seriousness" of the litigation and the issues involved and the role of the government in the litigation—weigh against allowing discovery.  The Supreme

- 13 -

Court's view on a state and local government's exercise of police power is well-established:

> It is to be remembered that we are dealing with one of the most essential powers of government—one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. *See Chi. & Alton R.R. Co. v. Tranbarger*, 238 U.S. 67, 78 (1915). To so hold would preclude development and fix a city forever in its primitive conditions. [T]here must be progress, and if in its march private interests are in the way, they must yield to the good of the community.

*Hadacheck v. Sebastian*, 239 U.S. 394, 410 (1915). Applying the reasoning of *Hadacheck*, the court concludes that factors three and four weigh against disclosure.

d

Regarding factor five—the possibility of future timidity among government employees (here, legislators)—"courts have long recognized that the disclosure of confidential documents concerning intimate legislative activities should be avoided." *Veasey*, 2014 WL 1340077, at *3 (citation omitted). Accordingly, the court holds that the fifth factor weighs against disclosure.

e

The court concludes that the overall balance of factors weighs in favor of applying the legislative privilege to excuse the non-party city officials from producing the information covered by topics (i)-(iv).

- 14 -

D

The court now considers whether, and to what extent, the non-party city officials waived the legislative privilege.

1

The legislative privilege can be waived under certain conditions. *See Favors v. Cuomo*, 285 F.R.D. 187, 211-12 (E.D.N.Y. 2012).  For example, legislative privilege can be waived when "the Legislator publicly reveal[s] those documents" or "the statements have no connection whatsoever with 'legitimate legislative activity.'"  *Id.*; *see also Hubbard*, 803 F.3d at 1308 (quoting *Tenney*, 341 U.S. at 376).  But "formal technicalities are not a proper basis for denying an otherwise proper claim of governmental privilege if the grounds for assertion of the privilege are adequately presented to the district court."  *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882-83 (5th Cir. Unit A Mar. 1981).  The purpose of some procedural prerequisites is simply "to insure that subordinate officials do not lightly or mistakenly invoke the government's privilege in circumstances not warranting its application."  *Id.* at 882.  If there is "sufficient compliance" to satisfy that goal, the privilege should be honored.  *Id.* at 882-83.  In *Branch* it was enough that the Equal Employment Opportunity Commission's ("EEOC's") Houston director: (1) consulted with the office of the General Counsel at the EEOC, and (2) "made the EEOC's objections to disclosure and its basis for them known to the court in written responses to questions accompanying the subpoena itself."  *Id.* at 883.

2

The court concludes that the non-party city officials did not waive the legislative privilege for any request where the non-party city officials asserted the privilege. The non-party city officials did not publicize the production that MC Trilogy seeks (which is why MC Trilogy requests the documents), and the communications and notes connect with "legitimate legislative activity," as established above. *See Hubbard*, 803 F.3d at 1308. In *Branch* the Fifth Circuit held that a party who consults with an attorney and makes the objection to disclosure and its basis known has demonstrated "sufficient compliance" with any procedural safeguards concerning legislative privilege. *See Branch*, 638 F.2d at 883. Because the non-party city officials did not publicize the communications and notes that MC Trilogy seeks and consulted with an attorney and asserted the privilege in response to some document requests, the legislative privilege has not been waived to request for production ("RFP") Nos. 4, 6, 17, and 20. Accordingly, the court grants the non-party city officials' motion to quash to the extent MC Trilogy seeks production of documents in topics (i)-(iv) barred by the legislative privilege under Rule 45(d)(3)(A)(iii).

To the extent the non-party city officials have *not* asserted legislative privilege in response to some document requests, however, the privilege has been waived.[6] Rule 45(d)(2)

---

[6]The non-party city officials expressly asserted the legislative privilege only in response to some discovery requests, but not other, similar requests. For example, RFP No. 2 requests "all notes prepared by You or provided to You relating to the Preliminary Plat Application, or any portion thereof, including all such notes prepared by You or provided to You at any meeting of the City Council where the Preliminary Plat Application, or any portion thereof, was considered or discussed." Non-Party Officials App. (ECF No. 59) at 78,

provides, in pertinent part: "When information subject to a subpoena is withheld on a claim that it is privileged . . . , the claim shall be made *expressly* . . . ."  Rule 45(d)(2) (emphasis added).  Thus some withheld documents are subject to disclosure despite the fact that they contain the non-party city officials' motives, impressions, and/or opinions of legislative actions.  The disclosure is nonetheless limited to the extent it poses an undue burden or is covered by attorney-client privilege or work product protection.

E

The court next considers the extent to which the remaining discovery requests pose an undue burden.

1

Rule 45(d)(3)(A)(iv) requires that, on timely motion, the court by which a subpoena was issued must quash or modify the subpoena if it "subjects a person to undue burden."  Rule 45(d)(3)(A)(iv).  The movant has the burden of proof, *see id.*; *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (Fitzwater, J.)), and must meet "the heavy burden of establishing that compliance with the subpoena would be 'unreasonable and oppressive.'"  *Williams*, 178 F.R.D. at 109.

"Whether a burdensome subpoena is reasonable 'must be determined according to the

---

¶ 2.  RFP No. 4 makes an identical request concerning the ROW Final Plat Application.  Yet counsel for the non-party city officials only asserted legislative privilege in response to RFP No. 4.

facts of the case.'" *Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998) (internal quotation marks omitted)).  Among the factors that the court may consider in determining whether there is an undue burden are "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Wiwa*, 392 F.3d at 818 (citing *Williams*, 178 F.R.D. at 109).  The status of a witness as a non-party entitles the witness to consideration regarding expense and inconvenience.  *See* Rule 45(c)(2)(B).  Undue burden can be found when a subpoena duces tecum is facially overbroad.  *See, e.g.*, *Wiwa*, 392 F.3d at 818.

2

The non-party city officials assert that RFPs Nos. 7-15, 22, and 23 pose an undue burden.  The first category of requests (Nos. 7, 8, 9, 11, 14, and 15) concerns information relating to the McLendon-Chisholm Portion Trilogy Development, MUD, and the Trilogy Development as a whole.  The second category of requests (Nos. 10, 12, and 13) concerns information relating to the non-party city officials' telephone records.  The third category of requests (Nos. 22 and 23) concerns information relating to the modification of Horizon Road or any road adjacent to the Trilogy Development.

3

Category 1 RFPs (Nos. 7, 8, 9, 11, 14, and 15) pose an undue burden.  As written, the RFPs are facially overbroad because they make no attempt to limit production by any means.  The most egregious example is RFP No. 9, which requests production of "all

- 18 -

communications between [subpoenaed non-party city official] and any other Person relating to the Trilogy Development." The request does not specify reasonable restrictions on time, like dates Heath's Planning and Zoning Commission met; relevant persons with whom the non-party city officials communicated, like parties to the instant action; or particular documentary descriptions. RFP No. 9 arguably encompasses almost all RFPs considered in the instant subpoena. The status of the witnesses as non-parties only compounds the expense and inconvenience of such a broad request because the non-party city officials are only part-time citizen legislators. Modification of a subpoena is preferable, however, to quashing it. *See Wiwa*, 392 F.3d at 818 (footnote and citations omitted). The court orders the parties to meet and confer regarding the scope of RFPs Nos. 7, 8, 9, 11, 14, and 15. *See infra* § II(E)(6). The court will then consider modifying the scope of any RFP that remains in dispute.

4

Category 2 RFPs (Nos. 10, 12, and 13) also pose an undue burden. RFPs Nos. 10, 12, and 13 seek documents between January 1, 2021 and September 27, 2022 sufficient to evidence "all mobile phones [subpoenaed non-party city official] used," and log or list all incoming and outgoing "text messages" and "phone calls." Non-Party Officials App. (ECF No. 59) at 78-80, ¶¶ 10, 12, and 13). All the Fifth Circuit's factors for quashing a subpoena weigh against production. Regarding relevance and the need for the documents, MC Trilogy asserts no reason why *all* text messages and phone calls from any of the subpoenaed non-party city officials' phones have a bearing on its claims. In fact, MC Trilogy admits that the

- 19 -

search would be "a means to *begin* a determination to the probable existence" of "relevant communications."  P. Resp. to Mot. to Quash (ECF No. 70) at 16.  Such a request is "akin to an impermissible attempt to 'obtain every document which could conceivably be relevant to the issues in the case.'"  *Williams*, 178 F.R.D. at 110 (quoting *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 756) (11th Cir. 1985)).  Regarding the breadth of the request, it is clear that a request for every incoming and outgoing text message and phone call from each of the subpoenaed non-party city officials' phones is overly broad.  The time period covered also weighs against production because MC Trilogy cannot justify why it needs telephone records from January 1, 2021 to September 27, 2022 when the plat was denied in August 2021.

Taken as a whole, the burden imposed on the non-party city officials is too great when compared to the negligible discoverable information that MC Trilogy may obtain.  The court is particularly concerned about the burden on non-party city officials' privacy interests.  *See Riley v. California*, 573 U.S. 373, 393-96 (2014).  Based on the preference for modifying rather than quashing a subpoena, the court orders the parties to meet and confer regarding the scope of RFPs Nos. 10, 12, and 13.  *See infra* § II(E)(6).  The court will then consider modifying the scope of any RFP that remains in dispute.

5

Category 3 RFPs (Nos. 22 and 23) also pose an undue burden.  RFPs Nos. 22 and 23 seek production regarding "all communications" "relating to" the modification of Horizon Road and roads adjacent to the Trilogy Development since May 1, 2017.  Overall, the Fifth

Circuit's factors for quashing a subpoena weigh against production.  Factors one and two—relevance and the need for the documents—weigh in favor of production.  The court agrees with MC Trilogy that the production is relevant and necessary because the non-party city officials denied MC Trilogy's plat in part because it was inconsistent with Heath's Thoroughfare Plan.  Factors three and four—the breadth of the request and the time period—weigh against production.  Although RFP Nos. 22 and 23 are limited to Horizon Road and roads adjacent to the Trilogy Development, the requests do not offer particular documentary descriptions.  MC Trilogy also does not explain why it chose the time frame of May 1, 2017 to the present, especially when the plat was denied in August 2021.  Taken as a whole, the burden imposed on the non-party city officials outweighs MC Trilogy's discovery needs.  The expense and inconvenience on the non-party city officials, as part-time citizen legislators, to produce documents largely in Heath's custody and control is great.  As written, the RFPs are improper; however, the court will modify rather than quash the subpoenas.  The non-party city officials must produce all communications relating to the modification of Horizon Road and roads adjacent to the Trilogy Development in August 2021, when the action underlying the instant case occurred.

6

Within 21 days of the date this memorandum opinion and order is filed, counsel for MC Trilogy, with authority to bind their client, and for the non-party city officials, with authority to bind their clients, must meet face-to-face to fully confer regarding the scope of RFPs Nos. 7, 8, 9, 11, 14, and 15, and RFPs Nos. 10, 12, and 13.  At the face-to-face

- 21 -

meeting, counsel must engage in an item-by-item discussion of each disputed issue or discovery request and corresponding objection.  If unresolved issues remain, counsel for the non-party city officials must file a joint submission that identifies the RFP in question and states the basis of the parties' remaining disagreement.  This joint submission must be filed within 7 days of the date the meeting was held.

F

In summary, the motion is granted as to RFPs Nos. 4, 6, 17, and 20 based on legislative privilege. The motion is denied as to RFPs Nos. 7-15, 22, and 23, and the subpoenas are modified rather than quashed based on undue burden.  The parties must meet and confer regarding RFPs Nos. 7-15, and, if unresolved issues remain, counsel must file a joint submission that identifies the RFP in question and states the basis for the parties' remaining disagreement.  The motion is denied as to RFPs Nos. 1-3, 5, 16, 18-19, 21, and 24-25.

III

The court now considers Heath's motion to quash and for a protective order.

A

A party's standing to quash subpoenas served on non-parties pursuant to Rule 45 is limited.  The movant must "be in possession or control of the requested material; be the person to whom the subpoena is issued; or have a personal right or privilege in the subject matter of the subpoena." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). "A party challenging a subpoena issued to a non-party may not object on the grounds that it 'violates

another person's privacy rights . . . , that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Deitz v. Performance Food Grp., Inc.*, 2021 WL 2715974, at *1 (W.D. Tex. Apr. 21, 2021) (citing *River House Partners, LLC v. Grandbridge Real Est. Cap. LLC*, 2016 WL 3747613, at *3 (M.D. La. July 11, 2016)). Nevertheless, "a party does have standing to move for a protective order pursuant to [Rule 26(c)] . . . even if the party does not have standing pursuant to Rule 45(d)." *Field v. Anadarko Petroleum Corp.*, 2020 WL 4937122, at *2 (S.D. Tex. Aug. 24, 2020).

Rule 26(c) provides, in pertinent part: "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"  Rule 26(c).  The burden is on the movant to show that good cause exists, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (internal quotation marks omitted) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).  The movant "must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 590 (N.D. Tex. 2017) (Horan, J.) (first citing *Merrill*, 227 F.R.D. at 477; and then citing *SEC v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (Ramirez, J.)).

B

The court need not address Heath's motion insofar as it is mooted by the court's decisions *supra* at § II(E) regarding RFPs Nos. 4, 6-9, 11, 17, 20, 22, and 23.  Regarding the remaining RFPs (Nos. 1-3, 5, 16, 18, 19, 21, 24, and 25), Heath lacks standing to seek to quash the non-party subpoenas.  Heath asserts standing under Rule 45 on the ground that "the subpoenas concern information which is legally under the City's control."  D. Br. Mot. to Quash (ECF No. 61) at 2.  Heath cites the Texas Public Information Act ("TPIA" or "Act"), Chapter 552 of the Texas Government Code, to support its assertion: a government officer or employee *does not* have a "personal property right" to public information and thus *must* "surrender" it "to the governmental body" when the officer or employee has "control" of information requested under the Act.  *See* Tex. Gov't Code Ann. §§  552.203(4)(B), 552.233(a).  In other words, Heath asserts that it has "control" over the subpoenaed documents because government officers or employees surrender "control" of public information to a governmental body pursuant to information requests under the TPIA.

But the TPIA does not apply here.  MC Trilogy's complaint does not raise a claim that makes the Act relevant.  Even if the TPIA were relevant to the issue of standing, the brief "control" that the government may have over documents before making a comprehensive public disclosure under the Act is insufficient to confer standing.  Heath does not cite (and the court has not found) any case where a government's "control" of documents made or used by government officials or employees conferred standing to quash a non-party subpoena personally served on those officials or employees.  Other courts have held that the

- 24 -

government has standing to quash a non-party subpoena served on government officials or employees based only on some personal right or privilege with regard to the documents sought. *See Perez v. Kazu Constr., LLC*, 2017 WL 628455, at *10-11 (D. Haw. Feb. 15, 2017); *Zhou v. Pittsburg State Univ.*, 2002 WL 1932538, at *1 (D. Kan. July 25, 2002); *Kan. Health Care Ass'n v. Kan. Dep't. of Soc. & Rehab. Servs.*, 1990 WL 255000, at *1 (D. Kan. Dec. 18, 1990). Heath's only assertion of personal privilege is that "given the breadth of [the document] requests . . . [attorney-client privilege and work product protection] are clearly implicated." D. Br. Mot. to Quash (ECF No. 61) at 7. Such a blanket assertion is insufficient to confer standing to move to quash a non-party subpoena. Accordingly, the court denies Heath's motion to quash for lack of standing.

Regarding the motion for a protective order, Heath has not met its burden of demonstrating that a protective order is warranted. In a single sentence, Heath asserts that "the requests [] are duplicative, harassing, burdensome, redundant[,] and completely unnecessary." *Id.* at 4. A party must do more than make such conclusory statements to persuade the court that the discovery MC Trilogy seeks is unduly burdensome, oppressive, or the like. Accordingly, the court denies Heath's motion for a protective order.

IV

The court now considers MC Trilogy's motion to compel.

A

A party seeking discovery can move to compel production where the opposing party fails to comply with a Rule 34 RFP. *See* Rule 37(a)(3)(B)(iv). An incomplete response to

an RFP "must be treated as a failure to disclose, answer, or respond." Rule 37(a)(4). The burden is on the party resisting discovery—here, Heath—to establish why the motion to compel should not be granted. *See Merrill*, 227 F.R.D. at 470; *see also Lozano v. Dorel Juv. Grp.*, 2010 WL 11619687, at *1 (N.D. Tex. May 26, 2010) (Means, J.) ("Generally, the burden is on the party seeking to avoid compliance with a discovery request to show that the request is improper[,]" such that "in the context of a motion to compel, the party who opposes discovery must 'show specifically how [the request] is not relevant or how [the request] is overly broad, burdensome, or oppressive.'" (second and third alterations in original) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990))).

B

Heath's only response to the motion to compel is to request that the court establish a date by which litigation was reasonably anticipated for the purposes of work product protection. The federal work product protection found in Rule 26(b)(3) provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." "The burden is on the party who seeks work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial." *Harding*, 2016 WL 7426127, at *11. Absent a merits-related motion, the court will not make a substantive ruling regarding the

- 26 -

date by which litigation was reasonably anticipated.[7]  Heath has failed to establish that the discovery MC Trilogy seeks is improper.  Accordingly, MC Trilogy's motion to compel is granted.

No later than 21 days after the date of this memorandum opinion and order is filed, Heath must either produce any documents that are responsive to MC Trilogy's RFPs, or, if Heath withholds production of any responsive document based on a privilege or protection, produce a privilege log that includes all such documents.

*   *   *

The non-party city officials' July 13, 2023 motion to quash (ECF No. 57) is granted in part and denied in part.  Heath's July 13, 2023 motion to quash and for a protective order (ECF No. 60) is denied.  MC Trilogy's August 3, 2023 motion to compel production of documents (ECF No. 67) is granted.

**SO ORDERED**.

September 11, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[7]Heath misinterprets Rule 26(b)(3), which provides for a fact intensive inquiry into the "primary motivating purpose" behind the creation of the materials at issue.  *See In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000).  Heath merely asks the court to confirm that August 31, 2021 is the date by which litigation was reasonably anticipated, while simultaneously admitting that "there are other dates by which litigation would have been reasonably anticipated."  D. Br. Mot. to Compel (ECF No. 95) at 3.