IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MC TRILOGY TEXAS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:22-CV-2154-D |
| | § | |
| CITY OF HEATH, TEXAS, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action challenging a municipality's land use decisions, four subpoenaed non-party City of Heath, Texas ("Heath") officials[1] move under Fed. R. Civ. P. 45(d)(3) to quash and for a protective order on the ground that plaintiff MC Trilogy Texas, LLC ("MC Trilogy") is seeking information protected by legislative privilege. MC Trilogy separately moves to compel the depositions of the subpoenaed non-party city officials and to compel the renewed depositions of Heath city staff.[2] For the reasons explained, the court grants in part and denies in part both the non-party city officials' motion to quash and for a protective order and MC Trilogy's motion to compel.

_____

[1]The subpoenaed city officials include Brent Weaver, Frank New, James Tunnell, and Kelson Elam, who served as members of the City of Heath City Council or City of Heath Planning and Zoning Commission at the time of the alleged conduct.

[2]The subpoenaed city staff include Kevin Lasher ("Lasher"), Aaron Adel ("Adel"), and Norma Duncan ("Duncan").

I

The court has previously held in this case that the legislative privilege excused the non-party city officials from producing written discovery relating to Heath's decisions to enact a zoning ordinance and to deny MC Trilogy's final plat application. *See MC Trilogy Tex., LLC v. City of Heath ("MC Trilogy III")*, 2023 WL 5918925, at *4-6 (N.D. Tex. Sept. 11, 2023) (Fitzwater, J.).[3] MC Trilogy now seeks oral discovery from four non-party city officials regarding the following topics:

> (1) whether and to what extent the Commission and/or Council were even consulted regarding the Preliminary Plat Application; (2) the authority delegated to City staff, and by whom, regarding use of substantive interpretations of zoning regulations as the basis for refusing to provide a hearing with the Commission and/or the Council as to the Preliminary Plat Application; (3) the steps taken and communications had by and amongst City staff, including the city planning director, the Commission, and/or Council regarding the staff's incompleteness determination as

---

[3]The court assumes the parties' familiarity with its prior memorandum opinions and orders. *See MC Trilogy Tex., LLC v. City of Heath*, 662 F.Supp.3d 690, 695-96 (N.D. Tex. Mar. 16, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 3635639, at *1 (N.D. Tex. May 24, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 5918925, at *1 (N.D. Tex. Sept. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 6333115, at *1 (N.D. Tex. Sept. 28, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 7004442, at *1 (N.D. Tex. Oct. 24, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 7190652, at *1 (N.D. Tex. Nov. 1, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8569018, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8583487, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8583876, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8850760, at *1 (N.D. Tex. Dec. 21, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 U.S. Dist. LEXIS 10336, at *3-5 (N.D. Tex. Jan. 4, 2024) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 WL 201365, at *1 (N.D. Tex. Jan. 18, 2024) (Fitzwater, J.).

to the August 31, 2021 Preliminary Plat Application; (4) whether MC Trilogy's requests for "no-action certificates" based on the failure of the Commission and/or the Council to timely act on the August 31, 2021 Preliminary Plat Application and the July 5, 2022 ROW Final Plat Application were even considered by the Commission and/or Council, respectively, and if so, the facts surrounding such consideration; (5) the extent, if at all, the Preliminary Plat Application and the City planning director's incompleteness determination was discussed amongst or with anyone on the Commission and/or Council, and the substance of those discussions, as to which legislative privilege has been waived, assuming there would be any legislative privilege for such fact discovery; (6) the extent of any action initiated or considered by the Commission in connection with its responsibility to permanently zone annexed property; (7) reconciling minutes of meetings of the Commission and the Council that include statements regarding reasons for the incompleteness determination with the reasons stated in timely communications to the applicant thereunder from the City planning director; (8) actions initiated by the Commission, if any, to consider permanent zoning for any annexed property, for the subject property and any other property annexed into the City; (9) actions and communications of the City, the Commission, or members thereof, and/or the Council, or members thereof, related to the creation, interference, or dissolution of the Rockwall MUD #10; and (10) other non-legislative/non-deliberative matters relevant to the lawsuit.[4]

P. Br. (ECF No. 214) at 10-11.  The subpoenaed non-party city officials invoke legislative

privilege,[5] maintaining that the topics relate to legitimate legislative activity and the *Perez*

---

[4]In its motion to compel, but not in its response to the non-party city officials' motion to quash or for protective order, MC Trilogy also seeks information on topic (10): "other non-legislative/non-deliberative matters relevant to the lawsuit."  P. Br. (ECF No. 214) at 7; P. Resp. (ECF No. 225) at 5.

[5]The non-party city officials at times seek relief based on legislative immunity Legislative immunity shields legislators from *liability* for activities that fall within the "legitimate legislative sphere," either as the predicate of a cause of action or evidence

five-factor balancing approach weighs in favor of quashing the subpoenas.  MC Trilogy responds that the oral discovery it seeks from the non-party city officials does not relate to a legislative activity because it seeks to establish whether *any* legislative act was involved at all.  MC Trilogy posits that, to the extent the oral discovery does relate to a legislative activity, its interests outweigh the interests of the non-party city officials under the *Perez* five-factor balancing approach.

MC Trilogy also moves to compel the reopening of the depositions of certain Heath city staff members to respond to unanswered questions where opposing counsel instructed the deponent not to answer based on work product protection.[6]  MC Trilogy maintains that work product protection does not apply because Rule 26(b)(3) protects documents and tangible things, not testimony.  Heath also asserts this in response to questions that reference communications after August 31, 2021; this court has previously rejected Heath's request to

---

supporting it.  *See United States v. Helstoski*, 442 U.S. 477, 488 (1979) (federal legislators); *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (state legislators).  In addition to substantive and evidentiary use immunity, legislative privilege exists to safeguard against compulsory evidentiary processes regarding a broad scope of legislative activities.  *See La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235-36 (5th Cir. 2023).  Legislative privilege, unlike legislative immunity, is not absolute.  *See id.* at 236.  As such, when claims are brought against the state rather than individual legislators, legislative privilege must yield to vindicate important federal interests.  *See id.* at 237-38.  The court analyzes the non-party city officials' claim based on legislative privilege, not legislative immunity, because MC Trilogy states claims against Heath rather than the non-party city officials.

[6]In response to certain questions, opposing counsel also advised the deponent not to respond based on attorney-client privilege.  But MC Trilogy only seeks to compel responses where it maintains opposing counsel improperly invoked work product protection.  The court therefore does not address whether attorney-client privilege applies.

confirm August 31, 2021 as the date by which litigation was reasonably anticipated. *See MC Trilogy III*, 2023 WL 5918925, at *10 n.7. Rule 26(b)(3) requires a fact intensive inquiry into the "primary motivating purpose" behind the creation of the materials at issue. *See id.* Heath responds that the work product doctrine applies because Heath reasonably anticipated litigation with MC Trilogy on August 31, 2021, when MC Trilogy "suddenly and unexpectedly" withdrew its zoning application. D. and Non-Ps. Resp. (ECF No. 223) at 20.

Last, MC Trilogy moves to compel Heath to reopen the depositions of certain Heath city staff members to answer questions regarding their opinions on topics on which Heath has designated them as non-retained experts. At the depositions of certain Heath staff members, Heath's counsel objected that the deponents were "not qualified" to answer questions regarding the legal application and/or interpretation of city ordinances or the process of reviewing and responding to a preliminary plat application, but Heath now designates them experts on the topics. MC Trilogy maintains that "fairness" requires that the depositions be reopened. Heath responds that MC Trilogy voluntarily deposed these witnesses before the court-ordered deadline for designating experts had expired, so MC Trilogy should not be afforded another opportunity to depose the same witnesses.

The court is considering these motions on expedited briefing,[7] without oral argument.

---

[7]With court approval, the parties stipulated that the motions being decided today would be briefed on an expedited basis. Briefing concluded on January 23, 2024.

II

The court turns first to the non-party city officials' January 7, 2024 motion to quash and for a protective order.

A

Rule 26(b)(1) provides that a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Under Rule 45(d)(3)(A)(iii), if the party seeks information that "requires disclosure of privileged or other protected matter [and] no exception or waiver applies," the court, on timely motion, "must quash or modify [the] subpoena." *Sully v. Freeman*, 2017 WL 3457123, at *1 (W.D. Tex. Feb. 1, 2017). The moving party must establish that information sought by the subpoena is "privileged or other protected matter." *Id.*

Federal courts have the authority and duty to recognize claims of privilege that are valid under federal common law. *See* Fed. R. Evid. 501. The legislative privilege "is an evidentiary privilege, 'governed by federal common law.'" *Jefferson Cmty. Health Care Ctrs., Inc. v. Jefferson Par. Gov't ("Jefferson")*, 849 F.3d 615, 624 (5th Cir. 2017) (quoting *Perez v. Perry*, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014)). "State lawmakers can invoke legislative privilege to protect actions that occurred within 'the sphere of legitimate legislative activity' or within 'the regular course of the legislative process.'" *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 235 (5th Cir. 2023) (internal quotation marks omitted) (first citing *United States v. Helstoski*, 442 U.S. 477, 489, 499 (1979); and then citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). "[T]he privilege is not limited to the casting of a

- 6 -

vote on a resolution or bill; it covers all aspects of the legislative process" and protects the function of the legislature more broadly. *La Union*, 68 F.4th at 235; *accord In re Hubbard*, 803 F.3d 1298, 1310 (11th Cir. 2015).

The legislative privilege's primary purpose is to allow lawmakers to "focus on their public duties." *See, e.g.*, *Hubbard*, 803 F.3d at 1310 (citing *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011)); *see also Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) (explaining that the Speech or Debate Clause ensures that civil litigation will not "create[] a distraction and force[] Members to divert their time, energy, and attention from their legislative tasks to defend the litigation"). Complying with discovery requests detracts from lawmakers' public duties. *See La Union*, 68 F.4th at 237-38.

> The Supreme Court explained in *Tenney* that "[t]he reason for the privilege is clear." "In order to enable and encourage a representative of the public to discharge his public trust with firmness and success, it is indispensably necessary[] that he should enjoy the fullest liberty of speech, and that he should be protected from the resentment of every one, however powerful, to whom the exercise of that liberty may occasion offense." . . . "[I]t [i]s not consonant with our scheme of government for a court to inquire into the motives of legislators," and courts are not to facilitate an expedition seeking to uncover a legislator's subjective intent in drafting, supporting, or opposing proposed or enacted legislation.

*Id.* at 238 (quoting *Tenney*, 341 U.S. at 374, 377).

But the state legislative privilege is not absolute. *See, e.g.*, *League of United Latin Am. Citizens v. Abbott*, 2022 WL 2713263, at *1 (5th Cir. May 20, 2022) (stating that this

- 7 -

court and the Supreme Court have confirmed that the state legislative privilege is not absolute.).   "[T]he legislative privilege for state lawmakers is, at best, one which is qualified." *Jefferson*, 849 F.3d at 624.   The extent to which the legislative privilege is qualified is determined by "balancing the interests of the party seeking disclosure against the interests of the party claiming the privilege."  *Harding v. County of Dallas*, 2016 WL 7426127, at *3 (N.D. Tex. Dec. 23, 2016) (Fitzwater, J.) (citing *Perez*, 2014 WL 106927, at *2).  Courts assess the following five factors in performing the balancing test:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Id.*  In considering these factors, "the court's goal is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's 'need to act free of worry about inquiry into [its] deliberations.'"  *Id.* (quoting *Veasey v. Perry*, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014)).

## B

The court turns initially to the scope of the legislative privilege.

## 1

The parties disagree regarding whether the non-party city officials have properly invoked legislative privilege, that is, whether the information MC Trilogy seeks in the depositions falls within the privilege's scope.  The non-party city officials maintain that the

information MC Trilogy seeks relates to actions that occurred within the "the sphere of legitimate legislative activity" or within "the regular course of the legislative process." *See Tenney*, 341 U.S. at 376; *see Helstoski*, 442 U.S. at 489.  The non-party city officials cite *MC Trilogy III*, which held that Heath's decisions to enact a zoning ordinance and to deny MC Trilogy's final plat application were legislative in nature.  *See MC Trilogy III*, 2023 WL 5918925, at *4-5.  The information MC Trilogy now seeks in the depositions relates to the individual legislators' motivations regarding these legislative decisions.

MC Trilogy responds that the information it seeks from the non-party city officials relates to whether *any* legislative action occurred, considering that Heath failed even to consider MC Trilogy's preliminary plat application and its "no action" certificate.  The court therefore begins by evaluating whether the topics on which MC Trilogy seeks to depose the non-party city officials relate to a "legislative function," as required for the legislative privilege to apply.

2

Topics (1)-(5) and (7) relate to city council/zoning commission's motives and objectives to deny MC Trilogy's preliminary plat application.  For example, topics (1), (3), (5), and (7) seek information regarding the city council/zoning commission's decision to deny MC Trilogy's preliminary plat application as incomplete: (1) whether and to what extent the city council/zoning commission was even "consulted" regarding the preliminary plat application; (3) the "steps taken and communications had" by and amongst the city council/zoning commission regarding the staff's incompleteness determination as to the

preliminary plat application; (5) whether the city council/zoning commission "discussed" the incompleteness determination; (7) whether the minutes of the city council/zoning commission's meetings and timely communications to MC Trilogy can be reconciled regarding the "reasons" for the incompleteness determination. Topic (2) seeks information regarding the use of substantive interpretations of zoning regulations "as the basis for" its decision to deny MC Trilogy a hearing on the preliminary plat application. Topic (4) seeks information on whether the city council/zoning commission even "considered" MC Trilogy's requests for "no-action certificates" after MC Trilogy's preliminary plat application was denied.

The court has previously held that the plat approval process relates to a legislative function because the decision impacts the larger population, not specific individuals or property alone, and it is part and parcel of modern zoning procedures. *See MC Trilogy III*, 2023 WL 5918925, at *4. Topics (1)-(5) and (7) refer to the plat approval process and rely on different terminology to obtain information about the non-party city officials' motives, objectives, impressions, and/or opinions underlying the decision to deny MC Trilogy's preliminary plat application. MC Trilogy does not provide evidence or cite case law indicating that the court should reconsider whether the plat approval process relates to a legislative function, and the court finds no reason to do so. The court therefore concludes that topics (1)-(5) and (7) relate to a legislative action because they pertain to the plat approval process.

- 10 -

3

Topics (6) and (8) explicitly seek information regarding what the city council/zoning commission "considered" when permanently zoning the annexed property where MC Trilogy intends to develop.  In particular, topic (6) seeks information on "the extent of any action initiated or considered" by the zoning commission in connection with its responsibility to permanently zone annexed property, and topic (8) seeks information regarding the "actions initiated" by the zoning commission "to consider permanent zoning for any annexed property, for the subject property[,] and any other property annexed into the City."  In *MC Trilogy Texas, LLC v. City of Heath*, 2023 WL 2544308, at *3 (N.D. Tex. May 3, 2023) (Fitzwater, J.), and *MC Trilogy III*, 2023 WL 5918925, at *5, this court held that Heath's decision to enact a zoning ordinance is "clearly legislative in nature."  The court therefore concludes that topics (6) and (8) relate to a legislative action because they pertain to the enactment of a zoning ordinance.

4

Topic (9) seeks information regarding city council/the zoning commission's "actions and communications" relating to the creation, interference, or dissolution of Rockwall MUD #10, a municipal water district.  The court has not yet considered whether the city council/ zoning commission's decisions regarding water and sewer services relate to a legislative action.  It is, nevertheless, well-established that the discretionary police power includes the authority to regulate water and sewer services.  *See, e.g.*, *Hutchinson v. City of Valdosta*, 227 U.S. 303, 308 (1913) ("It is the commonest exercise of the police power of a state or city to

provide for a system of sewers[.]").  And many federal and Texas state courts characterize decisions regarding water or sewer services as legislative in nature.  *See Kaplan v. Clear Lake City Water Auth.*, 794 F.2d 1059, 1064 (5th Cir. 1986); *In re Perry*, 60 S.W.3d 857, 860 (Tex. 2001) (citing *Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 350 (Tex. App. 1989, orig. proceeding)).  The court therefore concludes that topic (9) relates to a legislative function insofar as it pertains to the city council/zoning commission's decision to regulate water and sewer services.

5

The court concludes that topics (1)-(9) relate to actions that are legislative in nature.[8] Accordingly, the information falls within the scope of the legislative privilege, and the non-party city officials properly invoked that privilege in response to MC Trilogy's discovery requests.

C

The court next considers whether the non-party city officials can rely on the legislative privilege to protect them from providing deposition testimony on topics (1)-(9). The court applies the *Perez* five-factor balancing approach to determine whether the interests of the party seeking disclosure (here, MC Trilogy) outweigh the interests of those claiming

_____

[8]In its motion to compel, but not in its response to the non-party city officials' motion to quash, MC Trilogy seeks information on topic (10): "other non-legislative/non-deliberative matters relevant to the lawsuit."  P. Br. (ECF No. 214) at 7; P. Resp. (ECF No. 225) at 5. Because topic (10) explicitly seeks to depose the non-party city officials on "non-legislative" matters, the court does not consider whether topic (10) relates to a legislative action.

the privilege (here, the non-party city officials).  *See MC Trilogy III*, 2023 WL 5918925, at

*5 (citing *Perez*, 2014 WL 106927, at *2).  The court considers together topics (1)-(9).

1

Factor one—relevance—weighs against allowing discovery.  The non-party city

officials contend that, as the court reasoned in *MC Trilogy III*, the discovery is not relevant

because individual legislators' motives are not required to prove a federal takings claim or

a Texas state-law Chapter 245 claim.  *See id.*  MC Trilogy now attempts to discover these

motives and thought processes through deposition discovery rather than written discovery.

MC Trilogy maintains that the discovery is relevant to determine whether the zoning

commission violated local public hearing processes.  But MC Trilogy does not explain how

violations of local laws are relevant to its federal- or state-law claims.  The court agrees with

the non-party city officials that the court's reasoning in *MC Trilogy III* applies, and MC

Trilogy can prove its federal takings and state-law claims without relying on the privileged

information it seeks in topics (1)-(9).  *See id.*  Accordingly, the court concludes that the non-

party city officials' depositions regarding topics (1)-(9) are not sufficiently relevant to weigh

in favor of allowing discovery.

2

Factor two—the availability of other evidence—weighs against allowing discovery.

The non-party city officials again maintain that, as the court reasoned in *MC Trilogy III*, MC

Trilogy can obtain evidence regarding topics (1)-(9) from other publicly available records.

*See id.* at *6.  The non-party city officials also aver that MC Trilogy has deposed numerous

- 13 -

city employees (and former employees) regarding topics (1)-(9) because their knowledge does not implicate legislative privilege.  MC Trilogy has deposed Heath's City Manager, Assistant City Manager, Director of Planning, City Secretary, and its former Public Works Director.  MC Trilogy is also set to depose the City Engineer.  MC Trilogy contends that the evidence is sparse regarding topics (1)-(9) because of Heath refuses to provide it and to answer related questions.  The court agrees with the non-party city officials that the court's reasoning in *MC Trilogy III* applies: MC Trilogy can rely on public records to establish whether Heath properly or improperly denied its plat in accordance with Chapter 245.  *See id.*  MC Trilogy has also deposed several witnesses regarding Heath city council's internal processes and daily operations at relevant times.  Accordingly, the court concludes that factor two weighs against discovery.

### 3

Factor three and four—the "seriousness" of the litigation and the issues involved and the role of the government in the litigation—weigh against allowing discovery.  The non-party city officials again point to *MC Trilogy III* because neither the seriousness of the litigation nor the role of the government has changed.  The state and local government's exercise of its police power remains one of the most essential powers of government and is therefore the least limitable.  *See id.* (quoting *Hadacheck v. Sebastian*, 239 U.S. 394, 410 (1915)).  MC Trilogy maintains that "the issues are serious" and it "should be permitted discovery to learn the truth surrounding" the government's misconduct.  But the instant case concerns the zoning process afforded to an individual property owner, and although the

- 14 -

litigation may be serious to the litigants, it is not the type of "serious" issue considered to weigh in favor of discovery. *See Swanston v. City of Plano*, 2020 WL 4732214, at *8 (E.D. Tex. Aug. 14, 2020) (finding seriousness of litigation "substantial" when plaintiff asserted claim that zoning laws discriminated on basis of disability); *ACORN v. County of Nassau*, 2009 WL 2923435, at *7 (E.D.N.Y. Sept. 10, 2009) (finding allegations were "serious indeed" when plaintiff asserted claims of race-based housing discrimination). Accordingly, the court concludes that factors three and four weigh against discovery.

4

Factor five—the possibility of future timidity among government employees (here, legislators)—also weighs against discovery. The non-party city officials posit that the court should apply *MC Trilogy III*'s rationale to compelled testimony. *MC Trilogy III* recognized that "the disclosure of confidential documents concerning intimate legislative activities should be avoided." *MC Trilogy III*, 2023 WL 5918925, at *6 (quoting *Veasey*, 2014 WL 1340077, at *3). The non-party city officials maintain that oral discovery is more invasive than written discovery and that such questioning of city councilmembers creates a restrictive atmosphere for local government. Moreover, they contend, because city councilmembers are typically unpaid or very modestly paid citizens who volunteer their time, such questioning would impose an extreme burden. MC Trilogy responds that "it is unlikely that requiring one member of the [zoning commission] and three members of [the city council] to provide testimony on the topics stated herein[,] not on their motivations in connection with the legislative process, would result in future timidity[.]" P. Resp. (ECF No. 225) at 6.

- 15 -

Many courts have recognized that judicial inquiry into the legislative process should be avoided because it ensures the independence of individual legislators to make decisions. *See La Union*, 68 F.4th at 238 ("A court proceeding that probes legislators' subjective intent in the legislative process is a 'deterrent to the uninhibited discharge of their legislative duty.'") (quoting *Tenney*, 341 U.S. at 377); *Veasey*, 2014 WL 1340077, at *3; *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 12, 2011) (citing *Rodriguez v. Pataki*, 280 F.Supp.2d 89, 102 (S.D.N.Y. 2003)); *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *21 (C.D. Cal. Oct. 10, 2003). Although MC Trilogy considers its intrusion into the legislative process slight, MC Trilogy is challenging the sorts of actions—amendments to zoning laws and decisions on plats—that occur in local governments hundreds of times per year. As explained in *Kay*

> If even a small fraction of the citizens who are negatively affected by such acts choose to sue——and to include allegations [such that they] therefore are entitled to depose dozens of city staff about their private opinions expressed prior to a city decision—local legislative and quasi-adjudicative activity could well be hampered.

*Kay*, 2003 WL 25294710, at *21. Moreover, this court has applied *MC Trilogy III*'s rationale to compelled testimony concerning legislative activities, *see Harding*, 2016 WL 7426127, at *6, and the court sees no reason to treat written discovery differently from oral discovery in this regard. Accordingly, the court concludes that the fifth factor weighs against discovery.

5

The court concludes that the overall balance of factors weighs in favor of applying the legislative privilege to excuse the non-party city officials from being deposed regarding the information covered by topics (1)-(9).[9]

D

The court considers last whether this is one of those "extraordinary instances" in which the legislative privilege must yield. *See United States v. Gillock*, 445 U.S. 360, 373 (1980).

1

"Extraordinary instances" include cases "where important federal interests are at stake," like "the enforcement of federal criminal statutes" or "extraordinary civil cases." *La Union*, 68 F.4th at 237-38. The Fifth Circuit does not define "extraordinary civil cases," but it cautions that the "qualifications" for those cases should not "subsume the rule." *Id.* at 238. Legislative privilege "would be of little value if legislators could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Id.* (quoting *Tenney*, 341 U.S. at 377). In *La Union* the Fifth Circuit held that a challenge to election laws under the Constitution and the Voting Rights Act did not rise to the level of "extraordinary civil case." *See id.* Thus "the claim of an unworthy purpose does not destroy the privilege" even

---

[9]The parties do not address whether the non-party city officials waived their legislative privilege, so the court does not address waiver.

when constitutional rights are at stake. *Id.* (internal quotation marks omitted) (quoting *Tenney*, 341 U.S. at 377); *see also Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*, 2023 WL 8360075, at *4 (S.D. Miss. Dec. 1, 2023) (finding challenge to Mississippi Legislature's 2022 State Senate and House redistricting plans as unlawfully diluting the voting strength of Black Mississippians did not rise to level of "extraordinary civil case").

2

MC Trilogy contends that some deposition testimony suggests that Heath proceeded in an "abnormal and unusual manner" regarding MC Trilogy's preliminary plat. Moreover, according to MC Trilogy, "it is at least a possibility that [the non-party city officials] stated outside of public meetings or executive session, and before a preliminary plat application was even submitted, that they did not want this development to go forward." P. Resp. (ECF No. 225) at 7. The non-party city officials reply that this case does not satisfy the "extraordinary civil cases exception" because "(1) there are not important federal interests at stake beyond a mere constitutional claim; (2) the case is not like a federal criminal prosecution; and (3) it is the type of case so easily brought that the legislative privilege would be effectively destroyed." Non-Ps. Reply (ECF No. 228) at 9. The court agrees with the non-party city officials.

The court concludes that this case does not present an "extraordinary instance" where the legislative privilege must yield. MC Trilogy does not contend that important federal interests are at stake but instead maintains that its claims of "abnormal and unusual" process

and bias by the non-party city officials justify its discovery request.  The law is clear: a claim of an unworthy purpose does not destroy the privilege even when constitutional rights are at stake.  *See La Union*, 68 F.4th at 238.  MC Trilogy has failed to show that this case presents an extraordinary instance where the legislative privilege must yield.

E

To the extent that MC Trilogy seeks deposition testimony on topics (1)-(9) that is *not* barred by the legislative privilege,[10] the non-party city officials have failed to establish the necessary high-ranking status to shield them from being deposed.

1

> It is a settled rule in this circuit that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.  Top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions.

*In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (internal quotation marks, brackets, and citations omitted).  "'High ranking government officials have greater duties and time constraints than other witnesses' and . . . without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation."  *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (quoting *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993)).  Thus before requiring such testimony, the court must consider: "(1) the deponent's high-ranking status; (2) the substantive reasons for the deposition; and (3) the

---

[10]This includes topic (10) insofar as it relates to topics (1)-(9).

- 19 -

potential burden the deposition would impose on the deponent." *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (first citing *FDIC*, 58 F.3d at 1060; and then citing *In re Bryant*, 74 Fed. Appx. 215, 218 n.2 (5th Cir. 2018) (per curiam)).   "Once the court has determined the government official qualifies as high ranking, the burden shifts to the party seeking to depose the high-ranking official to demonstrate extraordinary circumstances." *Jackson Mun. Airport Auth. v. Bryant*, 2018 WL 3543955, at *2 (S.D. Miss. July 20, 2018) (quoting *Freedom From Religion Found., Inc. v. Abbott*, 2017 WL 4582804, at *10 (W.D. Tex. Oct. 13, 2017), *appeal dismissed*, 2018 WL 1989629 (5th Cir. Mar. 14, 2018)); *see also Thomas v. Cate*, 715 F.Supp.2d 1012, 1049 (E.D. Cal. 2010).

2

The non-party city officials' sole contention regarding their high-ranking status is that they "are the highest-level officials in the City of Heath."  Non-Ps. Br. (ECF No. 211) at 13. The non-party city officials do not cite any case law (and the court has not found any) demonstrating that city councilmembers or zoning board members are "high-ranking government officials" *per se* for deposition purposes.  And the non-party city officials make no attempt to elaborate on the responsibilities of a city councilmember or zoning board member other than to briefly mention in a footnote that city councilmembers are typically unpaid or modestly paid citizens who volunteer their time.  While other district courts have found that prospective deponents had high-ranking status, they have done so based on much greater evidence.  *See Bryant*, 2018 WL 3543955, at *3.  For example, a district court in this circuit found high-ranking status when "[the governor's chief of staff testified that he

- 20 -

frequently works eighty hours per week, has to travel in-state and out-of-state, supervises the Governor's staff, oversees the Governor's Office's fiscal management, and serves as the Governor's chief liaison to all of the state's executive and independent agencies." *Id.* Because the burden is on the movants (here, the non-party city officials) when moving to quash and for a protective order, and because the non-party city officials have not established that the city council/zoning board members are high-ranking officials, the court concludes that they have failed to demonstrate that they should be excused from testifying on topics (1)-(9) insofar as that testimony is *not* barred by the legislative privilege.

F

In sum, the court grants the non-party city officials' motion to quash the depositions of Brent Weaver, Frank New, James Tunnell, and Kelson Elam as the motion relates to topics (1)-(9) covered by legislative privilege.[11]  To the extent that topics (1)-(9) are *not* barred by legislative privilege, the court denies the non-party city officials' motion to quash the depositions.

III

The court turns next to MC Trilogy's motion to compel, in which it seeks to reopen the depositions of certain Heath city staff members to respond to unanswered questions where opposing counsel instructed the deponent not to answer based on work product

---

[11]Because the court grants the non-party city officials' motion to quash, it does not address whether the non-party city officials have shown good cause for a protective order.

- 21 -

protection.[12]

A

The federal work product protection found in Rule 26(b)(3) provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." Rule 26(b)(3). Determining whether a document was prepared in anticipation of litigation is a "slippery task," *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982), and requires a fact intensive analysis to determine whether "the primary motivating" purpose behind the creation of the document was to aid in possible future litigation, *see In re Kaiser Aluminum & Chemical Co.*, 214 F.3d 586, 593 (5th Cir. 2000); *United States v. Davis*, 636 F.2d 1028, 1039-40 (5th Cir. Unit A Feb. 1981).

Nonetheless, the Rule 26(b)(3) federal work product protection only partially codified the work product doctrine established in *Hickman v. Taylor*, 329 U.S. 495 (1947). The doctrine articulated in *Hickman* "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). A lawyer's work product may therefore be both tangible and intangible, like an attorney's recollection of what a witness said. *See Hickman*, 329 U.S. at 510; *Adams v.*

---

[12]As MC Trilogy points out in its reply, Heath did not raise legislative privilege in response to these deposition questions, so Heath has waived it as to Lasher, Adel, and Duncan.

*Mem'l Hermann*, 973 F.3d 343, 350 (5th Cir. 2020) (analyzing conversations between client and lawyer or things client did at the direction of her lawyers as work product).

"Like all privileges, the work product doctrine must be strictly construed." *Mims v. Dallas County*, 230 F.R.D. 479, 484 (N.D. Tex. 2005) (Kaplan, J.) (citing cases). The burden is on the party seeking work product protection to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial. *See Beasley v. First Am. Real Est. Info. Servs., Inc.*, 2005 WL 1017818, at *3 (N.D. Tex. Apr. 27, 2005) (Kaplan, J.); *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400 (E.D. Tex. 2003). Once this initial burden is met, a party seeking disclosure of ordinary work product must demonstrate both "a substantial need for the information *and* an inability to obtain the substantial equivalent without undue hardship." *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) (Ramirez, J.) (emphasis added); Rule 26(b)(3)(A)(ii) (providing that party ordinarily may not discover documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative, but, subject to Rule 26(b)(4), "those materials may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

B

Heath makes no attempt to apply work product protection to each specific question that opposing counsel asked a deponent. Heath maintains generally that work product protection can apply to oral discussions and that the situation made it clear that litigation

- 23 -

should be anticipated on August 31, 2021.  The court analyzes these arguments in turn.

The court agrees with Heath that the *Hickman* work product doctrine provides protection for both tangible and intangible attorney work product.  *See Dunn*, 927 F.2d at 875.  But MC Trilogy does not seek testimony on oral discussions that would impinge on attorney work product.  Courts have only extended intangible work product protection to verbal communications between attorneys and clients or witnesses.  *See Adams*, 973 F.3d at 350 (analyzing conversations between client and lawyer or things client did at the direction of her lawyers as work product); *Stanton v. Stevens Transp., Inc.*, 2021 WL 1686247, at *3 (D. Conn. Apr. 29, 2021) (declining to apply work product protection to conversations client had when counsel was not present for these meetings).  And, "to the extent that work product privilege is to be extended to verbal communications between a lawyer and a witness, it should be limited to questioning that is either specifically designed to discover the attorney's work product or for some other reason presents a substantial likelihood that a response to the question will result in a significant disclosure of counsel's legal strategy and thought processes."  *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC.*, 2002 WL 1334821, at *6 (S.D.N.Y. June 19, 2002).  MC Trilogy neither seeks to compel answers to questions that appear specifically designed to discover Heath's attorney's work product nor present a substantial likelihood that a response would disclose attorney work product.  For example, Heath invokes work product protection to the following question: "Did you [Kevin Lasher] and the mayor have any discussion about whether the amended ordinance should be enforced on and applied to the preliminary plat application that was submitted August 31st?"  P. Br.

(ECF No. 214) at 11 (bracketed material added).  The question specifically asks about a conversation between two people, neither of whom includes counsel.

Heath also cannot assert that it "reasonably anticipated litigation" on a certain date and preclude all discovery thereafter based on work product protection.  The court has previously noted that work product protection is a fact-intensive inquiry into the "primary motivating purpose" behind the materials and cannot be asserted to all things after a date by which litigation was reasonably anticipated.  *See MC Trilogy III*, 2023 WL 5918925, at *10 n.7.  It is Heath's burden to show that the materials at issue were prepared by its representative in anticipation of litigation or for trial.  *See Beasley*, 2005 WL 1017818, at *3. And Heath has failed to carry its burden because the court cannot tell, based on the context of the deposition question and Heath's brief, whether an attorney was somehow involved in Heath's internal staff communications or whether these communications were made with the "primary motivating purpose" to aid in possible future litigation.

The court concludes that Heath has failed to carry its burden to show that work product protection applies.  The court will not extend work product protection so far as to prevent MC Trilogy from obtaining answers to questions regarding oral communications among members of Heath's city staff concerning daily operations and processes. Accordingly, the court grants MC Trilogy's motion to compel a response from Kevin Lasher ("Lasher"), Aaron Adel ("Adel"), and Norma Duncan ("Duncan") regarding certain questions to which opposing counsel improperly invoked work product protection.

The court compels a response from Lasher to the following questions: "Did you and

- 25 -

the mayor have any discussion about whether the amended ordinance should be enforced on and applied to the preliminary plat application that was submitted August 31st?"; "Did you raise those concerns [regarding the legal ramifications of not having published this ordinance before August 31st, of 2021] with anyone other than the mayor?"

The court compels a response from Adel to the following questions: "What did you discuss about this preliminary plat application?"; "So what did you guys discuss about the preliminary plat application specifically as to processing it and responding to it?"; "How did you address this [regarding the processes you went through in responding to the preliminary plat application]?"; "Did you speak with Mr. Lasher at all about [the] concern that the [caption] hadn't been published as of that date[?]"; "Did you ask anyone if the caption had been published when you received that email?"; "Do you know of any representative of the City just saying we don't want that Trilogy Development to go forward?"; "And what were those discussions [referring to discussions with other city staff regarding the no-action certificate request]?"; "Were you instructed by anyone to make a determination specifically that the preliminary plat application was incomplete?"

The court compels a response from Duncan to the following questions: "Did anyone communication to you why they weren't publishing the notice of this public hearing 15 days before the hearing like the zoning ordinance requires?"; "Has any staff member in the City of Heath expressed to you that they do not want the Trilogy development to move forward?"; "Was that ever expressed to you or someone else in your presence by a staff member or other representative of the City of Heath [referring to desire for McLendon-Chisholm portion of

the Trilogy development not to move forward]?"; "Was there a specific communication that causes you to answer that way, or is it just because that's how it usually goes?"

## IV

The court turns last to whether MC Trilogy may resume certain depositions because Heath designated the witnesses as non-retained experts.

## A

Under Rule 30(a)(2)(A)(ii), absent written stipulation, a party must seek leave of court before a person whose deposition has already been taken in an action may be deposed a second time. *See* Rule 30(a)(2)(A)(ii). Rule 30 was amended to guard against redundant, burdensome discovery. *See* 8A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2104 (3d ed. 2023). In deciding whether to grant leave, courts consider the principles defined in Rule 26(b)(1) and (2). *See* Rule 30(a)(2). Rule 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Rule 26(b)(1). Rule 26(b)(2) grants the court authority to limit discovery if it is: (1) unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the person seeking the discovery has had ample opportunity to obtain the same information; or (3) the burden or expense of taking the discovery outweighs its likely benefits. *See* Rule 26(b)(2).

It is within the court's discretion to reopen or resume a deposition, and courts have typically done so "where a witness was inhibited from providing full information at the first

deposition" or "where new information comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck v. Union Bank of Switz.*, 1997 WL 411931, at *1 (S.D.N.Y. July 22, 1997) (citations omitted).  If a deposition is reopened based on newly discovered information, the deposition is limited to questions that relate to the newly produced information.  *See Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012) (internal quotation marks omitted) (quoting *Ganci v. U.S. Limousine Serv., Ltd.*, 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011)).  The lack of diligence in obtaining information before an initial or first deposition can result in denial of leave to conduct a second deposition.  *See id.* (citing *Fresenius Med. Care Holdings, Inc. v. Roxane Lab'ys, Inc.*, 2007 WL 764302, at *2 (S.D. Ohio Mar. 9, 2007)).

B

MC Trilogy maintains that the court "should order resumed" the depositions of Lasher, Adel, and Duncan because Heath designated them as non-retained experts and testifying experts after MC Trilogy deposed them.  MC Trilogy does not cite any case law for this contention, but it posits that "fairness" requires that the depositions be resumed. Heath responds that MC Trilogy was aware of the deadlines to designate experts and to obtain oral discovery and voluntarily opted to depose Adel before the deadline to designate experts expired.  Heath also contends that it only instructed Adel not to answer questions based on legislative privilege and work product protection, both of which it says apply.

MC Trilogy has demonstrated that these are circumstances "where a witness was inhibited from providing full information at the first deposition" and "where new information

comes to light triggering questions that the discovering party would not have thought to ask at the first deposition." *Keck*, 1997 WL 411931, at *1. Lasher, Adel, and Duncan were prohibited from providing full information in response to MC Trilogy's questions because Heath improperly invoked work product protection. *See supra* § III(B). And their new expert designations may also be considered new information that triggers questions that MC Trilogy would reasonably not have thought to ask because MC Trilogy has a new purpose for deposing them as non-retained experts rather than as mere fact witnesses.

Although the court concludes that the depositions should be reopened, it holds that limitations should be imposed so as to avoid (or at least minimize) duplicative discovery. *See VeroBlue Farms USA Inc. v. Wulf*, __F.R.D.__, 2021 WL 5176839, at *10 (N.D. Tex. Nov. 8, 2021) (Horan, J.) ("If a deposition is reopened because of newly discovery information, the court should limit the deposition to questions related to this information.") (quoting *O'Connor v. Cory*, 2018 WL 5016291, at *2 (N.D. Tex. Oct. 16, 2018) (Boyle, J.)). The court therefore limits the resumed depositions of Lasher, Adel, and Duncan to those questions where opposing counsel improperly invoked work product protection, and those questions regarding the legal application and/or interpretation of city ordinances or the process of reviewing and responding to a preliminary plat application, which Heath instructed the city staff not to answer previously and which topics Heath now designates them as non-retained experts.

\* \* \*

For the reasons explained, the court grants in part and denies in part the non-party city officials' motion to quash and for a protective order and MC Trilogy's motion to compel.

**SO ORDERED**.

January 29, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 30 -