IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MC TRILOGY TEXAS, LLC, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | Civil Action No. 3:22-CV-2154-D |
| § | |
| CITY OF HEATH, TEXAS, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this action challenging a municipality's land use decisions, defendant City of Heath, Texas ("Heath") moves to dismiss MC Trilogy Texas, LLC's ("MC Trilogy's") federal- and state-law takings claims under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons that follow, the court denies the motion. Because the court is denying Heath's motion, it denies as moot MC Trilogy's motion requesting the court to strike portions of Heath's reply brief appendix, or, alternatively, to file a surreply.

I

The court assumes the parties' familiarity with its prior memorandum opinions and orders and recounts only the necessary facts to provide context to its ruling.[1]

---

[1]*See MC Trilogy Tex., LLC v. City of Heath*, 662 F.Supp.3d 690, 695-96 (N.D. Tex. Mar. 16, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 3635639, at *1 (N.D. Tex. May 24, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 5918925, at *1 (N.D. Tex. Sept. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 6333115, at *1 (N.D. Tex. Sept. 28, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 7004442, at *1 (N.D. Tex. Oct. 24, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 7190652, at *1 (N.D. Tex. Nov. 1,

In 2010 Heath purportedly annexed 139 acres of undeveloped land ("the Property").[2] At the time the Property was annexed, it was subject to a temporary zoning classification that designated the land as an Agricultural District. The classification allowed single-family residences to be built on lots that were at least one acre in size.[3]

---

2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8569018, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8583487, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8583876, at *1 (N.D. Tex. Dec. 11, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2023 WL 8850760, at *1 (N.D. Tex. Dec. 21, 2023) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 U.S. Dist. LEXIS 10336, at *3-5 (N.D. Tex. Jan. 4, 2024) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 WL 201365, at *1 (N.D. Tex. Jan. 18, 2024) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 WL 346512, at *1 (N.D. Tex. Jan. 29, 2024) (Fitzwater, J.); *MC Trilogy Tex., LLC v. City of Heath*, 2024 WL 1641233, at *1 (N.D. Tex. Apr. 16, 2024) (Fitzwater, J.).

[2]Heath does not specify whether its standing argument is based on constitutional or prudential standing. But because the court has an independent obligation to determine whether it has subject matter jurisdiction before addressing prudential standing, it will analyze Heath's challenge to MC Trilogy's standing under the Rule 12(b)(1) standard. *See Nixon v. Hegar*, 2021 WL 4197207, at *2 (N.D. Tex. Sept. 15, 2021) (Fitzwater, J.) (explaining that a challenge to a plaintiff's constitutional standing should be raised by motion under Rule 12(b)(1) while a challenge to a plaintiff's prudential or statutory standing is properly granted under Rule 12(b)(6)) (citing *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011)). When, as here, the Rule 12(b)(1) motion to dismiss presents a factual challenge to standing, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Hunter v. Branch Banking & Tr. Co.*, 2013 WL 4052411, at *2 (N.D. Tex. Aug. 12, 2013) (Fitzwater, C.J.) (internal quotation marks omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981)). "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413.

[3]The court need not address the validity of the temporary zoning classification for purposes of deciding this motion.

On October 22, 2020 Huffines Land Holding Partners, LP ("Huffines")—MC Trilogy's affiliate and predecessor in interest—contracted to purchase the Property (and an additional 754 acres outside of Heath's jurisdiction) from Warren Hodges ("Hodges"). The purchase and sale agreement provided for a 365-day inspection period and subsequent 45-day closing period.

On July 28, 2021 Teague, Nall and Perkins ("TNP") applied to Heath for rezoning of the 139-acre parcel from an agricultural to a planned development classification for the "Trilogy Development." Hodges signed the rezoning request because he owned the Property at the time.

On August 24, 2021 the Heath City Council enacted Ordinance 210824A, amending the temporary zoning classification to require parcels of at least ten acres per each single-family home. On September 4, 2021 Ordinance 210824A purportedly became effective after its publication in *The Dallas Morning News*. That same day, MC Trilogy filed a certificate of formation with the Texas Secretary of State.

After Ordinance 210824A was adopted, but before it purportedly took effect, Hodges authorized a TNP engineer to apply to Heath for a preliminary plat on August 31, 2021. Shortly thereafter, Heath's planning director communicated on two occasions, September 2 and September 10, that the preliminary plat application was incomplete because it did not conform to "the requirements of the (A) Agricultural District as amended by Ordinance No. 210824A." P. Resp. (ECF No. 312) at 6, ¶ 10.

On October 14, 2021 MC Trilogy (through counsel) requested that the Heath Zoning

Commission provide it a "no action certificate" to ensure that its preliminary plat complied with zoning regulations because the commission failed to "approve, approve with conditions, or disapprove" the preliminary plat application in the required time. *Id.* at ¶ 11. Heath (through counsel) responded on December 22, 2021, refusing MC Trilogy's request for a "no action certificate" and recommending that it request a permanent zoning change.[4]

On December 6, 2021, in accordance with the purchase and sale agreement, Hodges signed a special warranty deed conveying the Property to MC Trilogy. MC Trilogy purchased the Property for $22,250,000 at closing.

On July 5, 2022 MC Trilogy applied to Heath for a final plat that envisioned lots under Heath's jurisdiction to be at least one acre per single-family residence. Heath commented on July 15. MC Trilogy responded on August 1, 2022, but did not address the comment that no preliminary plat had been approved for the project. Heath's Zoning Commission denied MC Trilogy's final plat on August 2, 2022, but did not provide written reasons for its denial despite MC Trilogy's request.

On September 7, 2022 MC Trilogy requested that the Heath Zoning Commission provide it a "no action certificate" to ensure that its final plat complied with zoning regulations. Heath refused, and this litigation followed.

The parties have completed discovery. Heath now asserts, *inter alia*, that MC Trilogy lacks standing to assert a federal- or state-law takings claim because it did not own the

---

[4]The TNP engineer later withdrew the zoning change request submitted to Heath.

-4-

Property on any date that its regulatory takings claims ripened; and that if this court dismisses MC Trilogy's only remaining federal-law claim, the court should decline to exercise supplemental jurisdiction over the pendent state-law claims. MC Trilogy opposes the motion and responds that it has constitutional standing in its own right. MC Trilogy also moves to strike Heath's reply brief appendix, or, alternatively, to file a surreply, contending that Heath submitted new and additional evidence that could have been, but was not, included in its original appendix.[5]

The court is deciding the motion on the briefs, without oral argument.

II

Article III of the United States Constitution limits the jurisdiction of a federal court to an actual "case" or "controversy." U.S. Const. art III, § 2. The standing doctrine implements this constitutional limitation by requiring that a plaintiff establish "'a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). As the party seeking to invoke this court's jurisdiction, MC Trilogy bears the burden of establishing standing according to the degree of evidence required at the pleading stage of litigation. *See*

---

[5]The court has not relied on Heath's reply brief appendix for the facts described above. Nonetheless, Heath's original appendix includes much of the same information in its reply appendix. For example, Heath's original appendix also includes Heath Ordinance 210824A, MC Trilogy's zoning plat application, MC Trilogy's certificate of formation, and the special warranty deed conveying the Property to MC Trilogy.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Procter & Gamble Co v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). "[O]n a motion to dismiss, [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (internal quotation marks, citation, and alteration omitted).

An organization like MC Trilogy may assert standing under either of two theories: "organizational standing" or "associational standing." *See OCA-Greater Hous. v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017). Under the organizational standing theory, an organization "may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the [organization] itself may enjoy." *Warth*, 422 U.S. at 511; *see also OCA-Greater Hous.*, 867 F.3d at 610. Under the associational standing theory, the organization "has standing to bring suit on behalf of its members[.]" *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); s*ee also Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citation omitted). MC Trilogy asserts organizational standing in response to Heath's motion.

To establish organizational standing, MC Trilogy must satisfy the same standing requirements as an individual plaintiff. *See NAACP v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010). Accordingly, MC Trilogy bears the burden of showing: "(1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision." *Hunter v. Branch Banking & Tr. Co.*, 2013 WL 4052411, at *1

(N.D. Tex. Aug. 12, 2013) (Fitzwater, C.J.) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)).  "In addition to these constitutional requirements, plaintiffs must not run afoul of prudential standing rules, including the 'general prohibition on a litigant's raising another person's legal rights.'"  *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).

III

The court will address the threshold issue of MC Trilogy's constitutional standing before examining prudential standing.  *See Nixon v. Hegar*, 2021 WL 4197207, at *2 (N.D. Tex. Sept. 15, 2021) (Fitzwater, J.).  MC Trilogy's constitutional standing turns on whether it has suffered some actual or threatened injury that can fairly be traced to the challenged action and is redressable by this court.

A

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted).  To be concrete, MC Trilogy's complained-of injury must be "real, and not abstract," and to be sufficiently particularized, it must "affect [MC Trilogy] in a personal and individual way."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).  To be actual or imminent, MC Trilogy's complained-of injury must also have already happened or be sufficiently threatening.  *See Lujan*, 504 U.S. at 560.  So long as these requirements are satisfied, any level of injury is sufficient to support

standing, even "an identifiable trifle." *United States v. Students Challenging Regul. Agency Procs.*, 412 U.S. 669, 689 n.14 (1973).

The Fifth Circuit has elaborated on what types of organizational activities satisfy the Supreme Court's injury-in-fact requirement. In *Louisiana ACORN Fair Housing v. LeBlanc* ("*ACORN*"), 211 F.3d 298, 305 (5th Cir. 2000), the panel held that an organization did not have standing because it had not shown "a drain on its resources" resulting from counteracting the effects of the defendant's actions. The panel explained that, although the fair housing organization spent roughly 100 hours defending a prospective tenant, the organization did not show that it had put other specific projects on hold as a result of the defendant's actions. *See ACORN*, 211 F.3d at 305; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). The Fifth Circuit similarly held that an organization did not have standing when it commissioned a $15,000 study to prepare for litigation related to the city's ordinance, held a meeting to discuss the ordinance's impact, and researched discriminatory zoning policies generally. *See City of Kyle*, 626 F.3d at 238; *see also Tenth Street Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020). The panel explained that, as in *ACORN*, the organization did not allege that it put any specific projects on hold, and its complained-of injury did not differ from its routine lobbying activities. *See City of Kyle*, 626 F.3d at 238. The Fifth Circuit has also held that the organization's activities could not be undertaken to prepare for litigation because the injury-in-fact requirement would then "pose no barrier." *OCA-Greater Hous.*, 867 F.3d at 611.

MC Trilogy has satisfied its burden to show an injury-in-fact under *Lujan* and relevant

-8-

Fifth Circuit authority. MC Trilogy's injury is concrete and particularized and actual because it has had to put on hold or at least delayed the Property's development under Heath's jurisdiction, although it has been able to develop adjacent land under other municipal authority. *See ACORN*, 211 F.3d at 305. MC Trilogy has spent time and resources undertaking the Property's development according to its proposed plans that envision a residential subdivision with one-acre minimum lots. For example, MC Trilogy sought a no action certificate for its preliminary plat application, submitted its final plat application, and responded to Heath's comments to the extent it considered the preliminary plat application approved.[6] MC Trilogy suffered these injuries without a view toward litigation or its daily operations. *See OCA-Greater Hous.*, 867 F.3d at 612. To the extent that these costs are associated with daily operations as a real estate developer, MC Trilogy's plans for the Property will be rendered redundant if Ordinance 210824A applies to the Property. MC Trilogy has also suffered economic injuries in terms of lost revenue because of its inability to develop the Property as proposed. *See K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) ("direct pecuniary injury" is usually "sufficient to establish injury-in-fact"). MC Trilogy alleges that it has not been able to sell lots on the Property and has incurred increased costs and interest charges. Heath neither challenges nor addresses MC Trilogy's pre-development expenditures or its lost revenue.

MC Trilogy's injuries resemble the injuries a real estate developer suffered in *Village*

---

[6]MC Trilogy undertook these actions after its legal formation on September 4, 2021.

*of Arlington Heights v. Metropolitan Housing Development Corp.* ("*Arlington Heights*"), 429 U.S. 252, 262 (1977). There, the plaintiff—a nonprofit corporation—entered into a 99-year lease to build low- and moderate-income housing on vacant property owned by a religious order. *See id.* at 256. The property sale was in part contingent on the developer's "securing zoning clearances from the Village." *Id.* When the municipality denied the developer's zoning request, the developer sued. *See id.* at 258-59. Although the *Arlington Heights* developer did not own the property and owed nothing if it could not secure zoning, the Supreme Court held that the developer satisfied constitutional standing requirements to assert its own rights. *See id.* at 261-63. The Court reasoned that the developer had "detailed and specific" plans for the property, which provided the requisite personal stake in the controversy. *Id.* at 261. The developer also suffered a cognizable economic injury because it had "expended thousands of dollars on the plans for [the project] and on the studies submitted to the Village in support of the petition for rezoning." *Id.* at 262. If rezoning was not granted, "many of these plans and studies [would] be worthless." *Id.*

Here, MC Trilogy has "detailed and specific" construction plans for the 139-acre plot under Heath's jurisdiction. *See id.* at 261. MC Trilogy paid TNP to draft and submit pre-development plans for the Property like the *Arlington Heights* developer who "expended thousands of dollars" on plans for the project and studies to support its rezoning petition.[7]

---

[7]MC Trilogy maintains that it "incurred and paid no less than $75,000.00 for TNP's preparation of the Preliminary Plat Application and the Final Plat Application, and for filing the same." P. Resp. (ECF No. 312) at 17-18. But the preliminary plat application was prepared and filed before MC Trilogy's legal formation. Accordingly, while the court

-10-

*Id.* at 262. If MC Trilogy cannot develop the Property according to its final plat—*i.e.*, according to the classification that allows single-family residences to be built on lots that are at least one acre in size rather than at least ten acres in size—its plans are "worthless." *Id.* Moreover, Ordinance 210824A stands as an "absolute barrier" to MC Trilogy's moving forward with its proposed development and recouping its final application costs. *Id.* at 261.[8] The similarities between MC Trilogy and the *Arlington Heights* developer support finding that MC Trilogy has alleged an injury-in-fact. *See also Charter Sch. Fund, LLC v. City of Desoto*, 2021 WL 1110708, at *5-6 (N.D. Tex. Mar. 3, 2021) (Rutherford, J.) (denying summary judgment when real estate developer raised fact issue as to whether it suffered injury-in-fact, even though it never owned the relevant property, because it invested a substantial amount of money into the development of its project); *Mercado Azteca, LLC v. City of Dallas*, 2004 WL 2058791, at *1-6 (N.D. Tex. Sept. 14, 2004) (Boyle, J.) (denying motion to dismiss on similar grounds).

Heath attempts to distinguish *Arlington Heights* on the basis that the developer did not

---

acknowledges that MC Trilogy paid TNP some amount less than $75,000 for the pre-development documents prepared and filed *after* MC Trilogy's legal existence (*i.e.*, those associated with the final plat application), for standing purposes, MC Trilogy does not rely on any costs it may have incurred to TNP before its legal existence.

[8]In a footnote in its reply brief, Heath attempts to distinguish *Arlington Heights* on the ground that Ordinance 210824A does not stand as an "absolute barrier" to MC Trilogy's planned development. *See* D. Reply (ECF No. 322) at 10 n.4. Heath suggests that MC Trilogy can "reactivate its zoning request" to "move forward with its Preliminary Plat." *Id.* The mere fact that MC Trilogy must submit a zoning request demonstrates that Ordinance 210824A bars MC Trilogy from developing the Property according to its proposed one-acre minimum lots.

assert a takings claim. But Heath's distinction exaggerates the role of the claim itself under this analysis. The standing analysis "focuses on the party seeking to get his complaint before a federal court and *not on the issues he wishes to have adjudicated*." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982) (emphasis added) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968)); *see also Warth*, 422 U.S. at 500 ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct was illegal," although "it often turns on the nature and source of the claim asserted."). Indeed, the Supreme Court's *Arlington Heights* analysis did not materially rely on the nature and source of the plaintiff's asserted claims. *See Arlington Heights*, 429 U.S. at 260-61. The Supreme Court concluded that the *Arlington Heights* developer satisfied the injury-in-fact requirement because it suffered a cognizable "economic injury." *Id.* at 262; *see Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) ("[E]conomic injury is a quintessential injury upon which to base standing."); *Young Conservatives of Tex. Found. v. Univ. of N. Tex.*, 609 F.Supp.3d 504, 511 (E.D. Tex. 2022) (collecting cases). Thus the court considers *Arlington Heights* relevant and persuasive regardless of the different claims.

Heath implicitly asserts that MC Trilogy was not injured because it did not own the Property on any date an alleged regulatory taking ripened, and it relies on a Second Circuit decision, *United States Olympic Committee v. Intelicense Corp., S.A.*("*USOC*"), 737 F.2d

263, 268 (2d Cir. 1984).[9] That case considered whether the Amateur Sports Act of 1978 (the "Act"), 36 U.S.C. §§ 371-96, required the consent of the United States Olympic Committee to market the Olympic symbol in the United States. *See id.* at 264. The argument was made that the Act's relevant section was unconstitutional as applied because it represented a taking. *See id.* at 267. The Second Circuit rejected that argument (in a single paragraph) because the Act was enacted in 1978, and the claimant did not enter into an agreement with the International Olympic Committee to market the pictograms that incorporated the Olympic symbol until 1979. *See id.* The court reasoned that "[o]nly the owner of an interest in property at the time of the alleged taking has standing to assert that a taking has occurred." *Id.* at 268. Accordingly, the Second Circuit held that the claimant did not have standing to pursue a takings claim. *See id.*

The court is not persuaded to follow *USOC*, which is not binding authority in any event. The Second Circuit did not analyze Article III's constitutional standing requirements explicitly or elaborate on its holding. *See id.* at 267-68. In fact, the Supreme Court authority that the Second Circuit cited in support of its holding never mentioned the standing doctrine. *See United States v. Dow*, 357 U.S. 17, 20-21 (1958). In *Dow* the Supreme Court decided when a taking occurred under the Declaration of Taking Act of February 26, 1931, 40 U.S.C. §§ 258a-258e, and who was entitled to recover the compensation award for that taking. This is evidence that the Court did not lack subject matter jurisdiction to hear the case. *See id.* at

---

[9]Heath does not explicitly address Article III's constitutional requirements as applied to MC Trilogy's federal- or state-law regulatory takings claim.

20-27. Moreover, Supreme Court authority since *USOC* has undermined the Second Circuit's holding that property ownership is dispositive of constitutional standing to assert a regulatory takings claim. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 626 (2001) (acknowledging that its takings jurisprudence does not stand for the rule that "postregulation acquisition of title" is fatal to a regulatory takings claim for deprivation of all economic use or to a *Penn Central* claim).[10]

In sum, MC Trilogy currently owns the Property. It has expended time and resources planning to develop the Property according to the size restriction on residential lots that complies with the temporary zoning classification that existed before Heath passed Ordinance 210824A. MC Trilogy cannot recoup these pre-development costs because Ordinance 210824A bars it from developing the Property according to its proposed plans. MC Trilogy has also suffered economic harms related to the delayed development of the

---

[10]Heath's other cited authority also does not support the proposition that, to have constitutional standing, a plaintiff asserting a Fifth Amendment regulatory takings claim must have owned the property taken at the time of the taking. For example, *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 149 (1st Cir. 2002), analyzed ripeness rather than standing; the court only mentioned standing in an explanatory parenthetical. *See id.* at 149. Heath also cites *von Kerssenbrock-Praschma v. Saunders*, 48 F.3d 323, 326 (8th Cir. 1995), for the simple proposition that the owner of an interest in the affected property has standing to challenge the restriction, and MC Trilogy currently owns the affected property. Heath's more recent authority actually supports a contrary position. *See Manhattan Ave. LLC v. Tampa*, 2023 WL 9958391, at *2 (M.D. Fla. May 5, 2023) (distinguishing physical and regulatory takings and acknowledging that "a purchaser retains the ability to challenge" a regulatory taking because it acquires the full property rights upon purchase, which includes the right to challenge existing regulations); *Epice Corp. v. Land Reutilization Auth. of St. Louis*, 2009 WL 4730337, at *4 (E.D. Mo. Dec. 4, 2009) ("A property interest acquired after the conduct that allegedly violated Plaintiff's property rights occurred is sufficient, therefore, to give Plaintiff standing to challenge the conduct.").

Property, including an inability to sell lots and increased costs and interest. Accordingly, MC Trilogy has satisfied its burden to show an injury-in-fact under *Lujan* and relevant Fifth Circuit authority.

B

The second and third elements of the *Lujan* standing test are traceability and redressability. *See Lujan*, 504 U.S. at 560-61.

To establish traceability, the plaintiff must demonstrate that the defendant's action caused the plaintiff's injury, rather than "the independent action of some third party not before the court." *Cameron Cnty. Hous. Auth. v. City of Port Isabel*, 997 F.3d 619, 623 (5th Cir. 2021) (citation omitted). In other words, the plaintiff must show that the injury is "the consequence of the [defendant's] actions, or that prospective relief will remove the harm." *Warth*, 422 U.S. at 505. "When the suit is one challenging the legality of government action or inaction" and "the plaintiff himself an object of the action," then "there is ordinarily little question that the action or inaction has caused him injury[.]" *Lujan*, 504 U.S. at 561-62.

To establish redressability, the plaintiff must demonstrate that the alleged injury is likely to be "redressed by a favorable decision." *Id.* at 561. The court considers "the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotation marks and citation omitted). Typically, where an injury is traceable to a defendant's conduct, it is redressable as well. *See OCA-Greater Hous.*, 867 F.3d at 613-14; *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc).

MC Trilogy has satisfied its burden to show that its injury is fairly traceable and redressable. MC Trilogy's Property is the subject of Ordinance 210824A, and Heath possesses the authority to enforce that ordinance against MC Trilogy. *Cf. Okpalobi*, 244 F.3d at 409 (holding that causal connection prong of *Lujan* standing test was unsatisfied when the named defendants were "without power to enforce the complained-of statute"). Heath's application of Ordinance 210824A to MC Trilogy's Property caused MC Trilogy's inability to develop the Property according to its proposed plans. Nevertheless, MC Trilogy's injury is redressable because Heath can compensate MC Trilogy for the alleged regulatory taking and interference with its use and enjoyment of its property.

Because MC Trilogy's Property is the subject of Ordinance 210824A and because the parties do not appear to seriously dispute that MC Trilogy has established traceability and redressability, the court easily concludes that MC Trilogy has satisfied these requirements.

IV

The court next considers whether MC Trilogy has established prudential standing.

Heath does not directly dispute that MC Trilogy has prudential standing, but it urges that this court should decline to adjudicate MC Trilogy's federal- and state-law takings claims on the grounds that MC Trilogy did not own the Property on any date that an alleged regulatory takings claim ripened. Heath's argument therefore appears rooted in principles of prudential standing rather than Article III standing to the extent it asserts that MC Trilogy cannot sue in federal court to enforce the rights of the prior landowner, Hodges.

Prudential standing does not emanate from the Constitution, and it instead "embodies

-16-

'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir. 2013) (citation omitted). The Supreme Court has acknowledged that the prudential standing doctrine "is in some tension with [its] recent reaffirmation of the principle that a federal court's obligation to hear and decided cases within its jurisdiction is virtually unflagging." *Lexmark Int'l*, 572 U.S. at 126 (internal quotation marks and citation omitted). Nonetheless, the Supreme Court has enumerated three principles that encompass prudential standing, "including the 'general prohibition on a litigant's raising another person's legal rights.'" *Singh*, 882 F.3d at 151 (quoting *Lexmark Int'l*, 572 U.S. at 126).

The prohibition against third-party standing generally requires that a litigant "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *U.S. Dep't of Lab. v. Triplett*, 494 U.S. 715, 720 (1990). The rationale behind the requirement is that "courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not," and, second, because the third parties themselves are "the best proponent[] of their own rights." *Singleton v. Wulff*, 428 U.S. 106, 113-14.

MC Trilogy's regulatory takings claim is not barred by the prohibition against third-party standing under the prudential standing doctrine. *See* 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8343 (2d ed. 2019) ("[T]he doctrine of third-party standing or *jus tertii*, still remains [for the time being] in the prudential category.").

-17-

MC Trilogy does not seek to raise anyone else's legal rights in its first amended complaint. MC Trilogy currently owns the Property, and satisfies the Article III constitutional standing requirements based on its own injuries. *See supra* § III(A)-(B). That is, MC Trilogy suffered economic harm that can fairly be traced to Heath's enforcement of Ordinance 210824A and is redressable by compensatory damages. In particular, Ordinance 210824A interferes with MC Trilogy's use and enjoyment of the Property distinct from its interference with Hodges's. MC Trilogy is a real estate developer who seeks to build single-family residences on the Property with one-acre minimum lots, and Ordinance 210824A interferes with the density of MC Trilogy's development by requiring ten-acre minimum lots. Hodges no longer owns the Property, and Ordinance 210824A did not interfere with his use and enjoyment of the Property because he used it for "running cattle and cutting hay"—not developing single-family residences on one-acre minimum lots.

Heath's argument, rather than challenge prudential standing, challenges the ripeness of MC Trilogy's regulatory takings claims—which this court addressed in March 2023. *See MC Trilogy Tex., LLC v. City of Heath*, 662 F.Supp.3d 690, 701-02 (N.D. Tex. 2023) (Fitzwater, J.). Indeed, Heath's reliance on *Palazzolo* demonstrates as much because that decision addressed ripeness. *See Palazzolo*, 533 U.S. at 626-28. *Palazzolo* reaffirmed the general rule that the right to assert a takings claim for a physical taking and to receive just compensation belongs to owner of the property at the time of the taking because "the fact and extent of the taking are known." *Id.* at 628. *Palazzolo* distinguished regulatory takings because those claims may involve a ripening period. *See id.* The Court held that title

transfers occurring during that ripening period do not preclude a subsequent purchaser or successive title holder from challenging the taking when the claim ripens. *See id.* The Court reasoned that if transfers of title after an ordinance absolved "the State of its obligation to defend any action restricting land use, . . . A State would be allowed, in effect, to put an expiration date on the Takings Clause." *Id.* at 627. Nevertheless, *Palazzolo* did not address whether title transfers occurring *after* the ripening period preclude that title holder from challenging the taking. *Palazzolo* therefore offers no support for Heath's contention that MC Trilogy does not have standing regardless whether it owned the Property before or after its claims ripened.[11]

Heath's motion essentially inquires into the merits of MC Trilogy's federal- and state-law regulatory takings claims. For example, Heath disputes when MC Trilogy's regulatory takings claim ripened and whether MC Trilogy is the party entitled to a just compensation award based on that date. Heath questions the validity of MC Trilogy's claims rather than its ability to bring them in federal court. The court declines to decide in the context of this motion the specific date when MC Trilogy's regulatory takings claims ripened. Neither party's brief addresses the merits of MC Trilogy's regulatory takings claims, and Heath's motion for summary judgment on those claims remains pending.

---

[11]The Supreme Court's decision in *Knick v. Township of Scott*, 588 U.S. 180 (2019), also did not address prudential standing. The Supreme Court in *Knick* held that a property owner can bring a federal suit at the time of the taking without first exhausting remedies in state court. *See id.* at 206. The Supreme Court never mentioned prudential standing, and this court does not consider *Knick* to be relevant to its standing inquiry.

V

The court need not address whether it should exercise supplemental jurisdiction over MC Trilogy's remaining state-law claims because it declines to dismiss MC Trilogy's federal takings claim.

\* \* \*

Heath's motion to dismiss under Rule 12(b)(1) is denied. MC Trilogy's motion requesting the court to strike Heath's reply brief appendix, or alternatively, to file a surreply, is denied as moot.

**SO ORDERED**.

June 27, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE